Darling *v.* March.

## Henry Darling *versus* Leonard March, Ex'r.

In an action by the indorsee against the indorser of a note for the accommodation of the maker, the latter, being released by the defendant from all claim for costs, is a competent witness for him.

The rule that the maker of a negotiable note shall not be permitted to show illegality in its consideration by his testimony, does not apply to a case, where the note first became a valid contract in the hands of the plaintiff, an indorsee, and with whom the illegal and usurious contract was made.

If the witness called has a balance of interest against the party calling him, he is competent to testify.

Where the plaintiff knew at the time that one of the partners indorsed the partnership name on the note in suit as security for the maker, it is, according to the decisions in this country, incumbent on him to rebut the presumption created by law, that he recieved the firm name as surety for another in fraud of the partnership.

Such presumption, however, may be rebutted by proof of frequent interchanges of the partnership names between the makers and indorsers for a long time, without direct proof of the assent of each member.

If a note has been indorsed by partners in the name of their firm, a waiver of demand and notice, being but the modification of an existing liability by dispensing with certain testimony which would otherwise be required, may be made by one partner, after the dissolution of the firm and before the note became payable.

Where a note for three thousand dollars which included usury was paid by the note in suit, of two thousand dollars, and by a note of one thousand dollars, paid before the commencement of the action; and where it did not appear on the trial that the illegal interest was separated from the principal and wholly included in either of the two last mentioned notes; and where twelve per cent. interest had been paid on the $2000 note; *it was held,* that under the Statute of this State, the illegal interest reserved in, and taken upon, the note in suit, should be deducted from the amount of it, and that the plaintiff should recover the balance, without costs, and should pay costs to the defendant.

This case came before the Court on a statement of facts signed by the counsel for the parties.

Assumpsit on a note dated Nov. 13, 1837, for two thousand dollars, signed by Lincoln, Foster & Co. payable to Willis Patten & Co. "at either bank in Bangor," six months after date, and indorsed Willis Patten & Co. Over the indorsement was written "holden without notice or demand," and no demand was proved, the plaintiff relying on the waiver.

It was admitted, or satisfactorily proved, at the trial, that Amos Patten, the defendant's testator, Willis Patten & Moses Patten, Jr. constituted the firm of Willis Patten & Co. prior to the first day of October, A. D. 1837; that on the eighteenth day of January, 1838, and for more than three weeks subsequently, notice that the firm had been dissolved on the preceding first day of October, and that Amos Patten had retired, and that a new firm under the same name, had been formed by Willis Patten & Moses Patten, Jr. was published in the Daily Whig and Courier, printed at Bangor; that the note about the time it fell due in May, 1838, was left in the Kenduskeag Bank for collection; that the officers of the bank had knowledge of the dissolution of the old firm at the time notice was published; that about the time the note fell due, the words "holden without notice or demand" were written on the note by Moses Patten, Jr.

It was proved on the part of the defendant by the deposition of Ephraim Lincoln, of the house of Lincoln, Foster & Co. that this was an accommodation note, known as such to the plaintiff; that it was the last of several renewals, growing out of a loan made by plaintiff to Lincoln, Foster & Co. on the security of Willis Patten & Co's name as indorsers; that after this note fell due, the plaintiff asked for payment, said he was a borrower of money, and if it was not paid he must have twelve per cent. interest; that up to August, 1839, the amount due on the note might have been secured at any time by attachment on the property of Lincoln, Foster & Co.; that, at that time they failed, and it has been impossible to secure it thus ever since; and that prior to giving his deposition, Lincoln was released by defendant, from all liability for costs, in

this suit. This deposition was objected to and admitted subject to exceptions.

It was further proved on the part of the defendant, by Moses Patten, Jr. whose testimony was objected to, and admitted subject to exceptions, he too testifying under a release from costs, that the old firm of Willis Patten & Co. was dissolved, or expired by limitation, on the first day of October, 1837, as stated in the published notice; that the waiver of demand or notice was written upon the note by himself the day before it fell due at the request of the cashier of the Kenduskeag Bank, who handed it to him for that purpose; that it was an accommodation note; that plaintiff first called upon him for payment, and gave notice of non-payment, in August, 1839, though previous to that, he had learned from Lincoln, Foster & Co. that it was not paid, but was informed by them that they were making payments; and that he, the witness, was residuary legatee of one eighth part of the estate of Amos Patten.

The foregoing facts and testimony being out, the case was, by agreement, taken from the jury, to be submitted to the Court, who are to order a nonsuit or default as the facts and law may warrant.

And if the Court shall be of opinion that the defendant is liable, they are to settle the principles on which the amount of liability is to be ascertained, upon the following facts : —

It appears by the deposition of Lincoln that his house paid to the plaintiff, for more than twenty months, interest on the original loan at the rate of 18 per cent, per annum, and for a year after that at the rate of 12 per cent. per annum, a portion of which was paid on this note. Said deposition is to be referred to for the facts on this point.

Upon these facts the defendant contends, that the excess over legal interest thus paid, should be allowed, so far as he is concerned, as payments towards the principal, and that he is liable only for so much as may remain due of the original loan and interest after making such deductions.

If the Court shall be of opinion that said claim of defendant is just and legal the note and Lincoln's deposition are to

be submitted to some competent person to ascertain, under the instructions of the Court, the amount due; and if they shall be of opinion, that it cannot be allowed, judgment is to go for what appears to be due on the note, principal and interest. The contents of Foster's deposition is sufficiently noticed in the opinion of the Court.

*W. Abbott* argued for the plaintiff; and cited Story on Partnership, 189, 161; 10 B. & Cr. 128; 2 B. & Ald. 795; Collyer on Part. 220; 15 Mass. R. 331; 7 East, 210; 2 Shepl. 271; 2 Esp. R. 731; 13 East, 175; 4 Shepl. 416, 419; 15 Wend. 364; 17 Mass. R. 94; 4 Mass. R. 156; 5 Greenl. 374; 4 Taunt. 466; 11 Ves. 5; Gow on Part. 335; Story on Part. 252; Collyer on Part. 311; 1 Gallis. 655; 6 Johns. R. 267; 10 Mass. R. 121; 8 Mass. R. 256.

*Rowe* argued for the defendant; and cited 7 T. R. 601; Peake's Ev. 117; 16 Johns. R. 70; 13 Maine R. 202; Bayl. on B. (P. & S. Ed.) 373; 16 Mass. R. 118; 5 Taunt. 464; 10 Johns. R. 270; 18 Johns. R. 167; 17 Johns. R. 176; 10 Johns. R. 231; 20 Johns. R. 287; 7 Mass. R. 470; 9 Mass. R. 55; 1 Wend. 529; 3 Kent, 47; Gow on Part. 72; 3 Pick. 5; 4 Maine R. 84; Story on Part. 190 to 211, and cases cited; 14 Maine R. 225; Story on Part. 458 to 462; 3 Kent, 63; 1 Stark. Ev. 375; 2 Johns. R. 300; 1 Hill, 572; 1 Peters, 351; 15 Johns. R. 424; 9 Cowen, 420.

The opinion of the Court was drawn up by

SHEPLEY J. — It may be proper to consider in the first place, whether Lincoln and Patten were competent witnesses. Lincoln, as one of the makers of the note, was liable to pay it in any event. If the defendant is obliged to pay it, he must repay him; and if not, he must pay to the plaintiff. And if the amount, which the plaintiff should recover in this suit, be reduced by his testimony, he will still be liable for the whole balance to the plaintiff. He is not therefore interested in the event of this suit beyond the costs, from which he has been released. *Freeman's Bank* v. *Rollins,* 1 Shepl. 202. It is objected, that he was not competent to testify, that it was an

usurious loan. This rule does not apply to a case, where the note becomes first a valid contract in the hands of the plaintiff, with whom the usurious loan was contracted. *Van Schaack* v. *Stafford,* 12 Pick. 565.

Moses Patten, Jr. knew, that the indorsement of the name of Willis Patten & Co. was made for the accommodation of the makers, if he did not make it, and made a written waiver of demand and notice upon it; and is therefore *legally* liable to pay it. If the defendant is compelled to pay it, he will be relieved from the payment of one sixth part of it, and will lose one eighth part only as a legatee of Amos Patten. Having been released from the costs, he is interested against the party, who called him.

The next question is, whether Amos Patten was bound by the indorsement of the name of the firm made on this note by one of the other partners as surety for the makers. There is no direct and positive testimony to prove, that he knew, that it was thus used. And there is testimony to prove, that the plaintiff knew it. Under such circumstances it is, according to the decisions in this country, incumbent on the plaintiff to rebut the presumption created by law, that he received the firm name as surety for another in fraud of the partnership. This may be done, and the consent of Amos Patten to such a use of the firm name may be inferred, from the habit and course of business. And when, from this course of business, it appears that the firm has received a valuable consideration for the use of the firm name on accommodation paper, by receiving the indorsement of another firm for its accommodation, the presumption of fraud will be effectually rebutted; unless it can be concluded, that one member of the firm, both made and received such indorsements, without the knowledge of the other partners. When such interchanges have been frequent and have been continued for sometime, it cannot be supposed, that a single member of the firm only had knowledge of it without charging the other members with gross neglect. And in such case they could have little cause to complain, that their own culpable negligence had occasioned losses. It would be

more reasonable to conclude, that they knew for what purposes the firm name had been used, than it would, that they were for a long time so inattentive to their own business as to be ignorant of the condition of their negotiable paper. It has accordingly been held, that such a course or habit of business is evidence of authority from all the members of the firm for such use of it. *Duncan* v. *Lowndes*, 3 Campb. 478; *Gansevoort* v. *Williams*, 14 Wend. 133. In the latter case, Nelson C. J. says, "But if it should appear, that a house was in the habit of indorsing at the bank or elsewhere for another, such general course of dealing, would be sufficient evidence of authority from all the members of the firm, and such use of it would bind all." It appears from the testimony in this case, that the firm name was used for the accommodation of the makers of the note in procuring the original loan in September, 1836, and again on the renewal of that note in March, 1837, and again on two notes to pay that in November, 1837. And Lincoln says, "at the time the original loan was made the two firms were not regular indorsers for each other, but indorsed for each other whenever asked occasionally, but not often; when the present note was given the firms indorsed for each other only to renew." The fair conclusion from this testimony is, that this indorsement was not a singular or unusual transaction; that the firms were in the habit of making and of receiving such indorsements; that the practice had been continued for more than a year, and for renewals of like paper after this note was made for what would have been considered a renewal. Such a habit of using the firm name could not have existed for such a length of time without the knowledge of each partner, without supposing that they kept no account of their liabilities, and that they were ignorant of the condition of their negotiable paper. It is but a just inference, that the testator knew and consented, that the name of the firm should be used for the accommodation of the makers occasionally, as they might desire it, and that this note originated from that use of the name.

The next question is, whether one member of the firm could

bind the other members, after its dissolution, by a waiver of demand and notice on paper existing before the dissolution. The dissolution operates as a revocation of all authority for making new contracts. It does not revoke the authority to arrange, liquidate, settle, and pay, those before created. For these purposes, each member has the same power as before the dissolution. If an account, existing before the dissolution, be presented to one of the former partners, he may decide, whether it should be paid or not, even though it be a disputed claim. He may decide, whether due notice had been given on negotiable paper, and may make or refuse payment accordingly. The waiver of demand and notice is but the modification of an existing liability, by dispensing with certain testimony, which would otherwise be required. If one of the former partners could not dispense with the proofs, which might be required at the time of the dissolution, he could not liquidate the accounts and agree upon balances. To waive demand and notice, and to settle accounts, is but to arrange the terms upon which an existing liability shall become perfect without further proof. In doing this he does not make a new contract, but acts within the scope of a continuing authority.

Another question submitted is, whether this must be considered an usurious contract.

There can be no doubt, that the note for $3000, bearing date on the fifth of March, 1837, included a considerable amount of illegal interest. And that note, or one made in renewal of it, was paid by the note now in suit for $2000, and by a note for $1000, which has been paid. There is no indication, that the illegal interest was separated from the principal and wholly included in either of these last notes. It would seem, therefore, that the note in suit must include two thirds of it. And there is proof, that interest at the rate of twelve per cent. per annum, has been paid upon this note. By the law of this State the illegal interest reserved in the note, and taken upon it, is to be deducted from the amount of it. The plaintiff will be entitled to recover the amount after deducting such interest, without costs; and the defendant will recover his costs against the plaintiff.