PAYNE *vs.* SLATE & GARDNER.

In respect to their creditors, copartners, after the dissolution, are joint debt-
ors, and nothing more.   What the joint makers of a promissory note may
not do to enlarge, prolong or continue existing liabilities, or to create a
new one in regard to the debt, copartners, after dissolution, may not do.

And whoever makes a promise or an acknowledgment, either orally or in
writing, or by a payment of principal or interest, which is to have the effect
to rescue a debt from the force of the statute of limitations, must be the
party to be charged, or be duly authorized by the party to be charged.

One copartner cannot, after the dissolution of the firm, bind his copartner by
a new promise, or revive a debt barred by the statute of limitations by a
promise, or by a payment of principal or interest, made either before or
after the lapse of the six years mentioned in the statute.

Where the plaintiff left with the defendants a sum of money, taking from
them a receipt for the amount, specifying that it was " to his credit on our
books, at six per cent interest," but containing no promise, and mentioning
no time of payment; *Held* that this was to be construed as a loan or de-
posit of money to be repaid on demand, with interest.

And that no action would lie to recover the money, mentioned in the receipt,
until after an actual demand and refusal.

APPEAL by the defendants from a judgment entered upon
a verdict at the circuit, and from an order denying a mo-
tion to set aside the verdict and for a new trial.

*G. G. Reynolds*, for the plaintiff.

*J. C. Carter*, for the defendant Gardner.

*By the Court*, BROWN, J.   On the 9th of May, 1848, the
plaintiff loaned or left with the firm of Slate, Gardner &
Howell, the sum of $1000, and took from them a receipt of
which the following is a copy :

"$1000.                          *New York, 9th May*, 1848.

Received from Captain William H. Payne one thousand
dollars, which is to his credit on our books at six per cent
interest.                    SLATE, GARDNER & HOWELL."

The firm at that time was composed of the defendants and
one Silas S. Howell, since deceased.   In April, 1850, the
firm was dissolved and a new copartnership formed, composed

Payne *v.* Slate.

of Slate & Gardner and one James H. Lyles, under the name of Slate, Gardner & Co., which assumed and undertook to pay the debts of the dissolved firm. Howell died about this time. In June, 1850, Slate, Gardner & Co. paid two years' interest on the money. They also paid one year's interest in April, 1851, and another year's interest in May, 1852. On the 27th of January, 1853, Slate, Gardner & Co. dissolved their business connection, to take effect from December 31st, 1852; Gardner at the same time assigning all his interest in the property and effects of the firm to Slate & Lyles, who continued the firm business under the name of Slate & Co. and agreeing to pay all the debts and liabilities of Slate, Gardner & Co. including that to the plaintiff, which is the subject of this action. This latter firm continued to pay interest on the money, down to the year 1859. This action was commenced on the 27th of November, 1861, and the complaint alleged a demand of payment of the debt in June, 1861. This fact is not denied in the answer, nor is it alleged that any other demand was at any time made. The defense of the defendant Gardner is the statute of limitations; that the plaintiff's action did not accrue within six years before the commencement of the action. The issue was tried before Mr. Justice LOTT, at the Kings circuit, in April, 1862, when the plaintiff had a verdict. A motion was afterwards made at the special term, to set aside the verdict and for a new trial, which was denied. From the judgment entered thereupon the defendant Gardner appealed.

If the debt is deemed to have become due and payable the moment the money was left with Slate, Gardner & Howell, (which I shall presently attempt to show it was not,) then I think the defense of the statute of limitations is made out, for it has been definitely settled, in this state certainly, that one copartner could not, after the dissolution of the firm, bind his copartner by a new promise, or revive a debt barred by the statute of limitations by a promise or by a payment of principal or interest, made either before or after the lapse

of the six years mentioned in the statute.  In *Shoemaker* v. *Benedict*, (1 *Kern.* 184,) Mr. Justice Allen furnishes a synopsis of what was decided and recognized as law in the leading case of *Van Keuren* v. *Parmelee*, (2 *Comst.* 523,) in these words : " 1st. The action is substantially though not in form upon the new promise.  And that such promise is not a mere continuation of the original promise, but a new contract springing out of and supported by the original consideration ; 2d. That to continue or renew the debt, there must be an express promise to pay, or an acknowledgment of the existence of the debt, with the admission or recognition of an existing liability to pay it, from which a new promise may be inferred ; 3d. That such acknowledgment or promise to take a debt out of the statute must be made by a party to be charged, or by some person authorized ; and 4th. That there is no mutual agency between joint debtors, by reason of the joint contract, which will authorize one to act for and bind the others in a manner to vary or extend their liability." *Dean* v. *Hewit* (5 *Wend.* 257) decided that it made no difference whether the new promise was made before or after the statute had attached.   When made after, the effect is to revive the debt, and when made before it has the same effect ; it keeps the claim alive ; so that on " an acknowledgment made at the end of five years the remedy is not lost till the expiration of eleven years after the first action accrued." There is but one other point material to the determination of the question I am considering in this action, and that is the effect of a payment ; and that arose and was disposed of in' the case of *Shoemaker* v. *Benedict*, (*supra.*)  Considering that the liability of the party charged, if it exists, arises upon contract—express contract—it is manifest upon principle that whatever is relied upon to charge the party and rescue the debt from the destroying force of the statute must operate upon the contract by renewing the old or creating a new one. The action is still upon the contract, and one must be recognized or established within the period of six years.   In the

Payne *v*. Slate.

case last referred to Mr. Justice Allen says, what must command universal assent : " As a fact by itself a payment only proves the existence of the debt to the amount paid, but from that fact courts and juries have inferred a promise to pay the residue. In some cases it is said to be an unequivocal admission of the existence of the debt. And in the case of the payment of money as interest it would be such an admission in respect to the principal sum. Again, it is said to be a more reliable circumstance than a naked promise; and the reason assigned is that it is a deliberate act, less liable to misconstruction and misstatement than a verbal acknowledgment. So be it. It is nevertheless only reliable as evidence of a promise or from which a promise may be implied." The case of *Van Keuren* v. *Parmelee* arose upon a note given by copartners in the name of the firm. That of *Shoemaker* v. *Benedict* upon a note signed by three individuals as joint makers; and so were the cases of *Winchell* v. *Hicks*, (18 *N. Y. Rep.* 558,) and *Reed* v. *McNaughton*, therein referred to. The counsel for the plaintiff contends there is a material difference between the liability of copartners and the joint makers of a promissory note, and claim that payments made by copartners, after dissolution and before the debt is barred, prevent the operation of the statute. The argument is founded upon the theory that for certain purposes (including the payment of obligations) the partnership continues after dissolution. This is doubtless true. But the question still occurs, does it continue for the purpose of creating new liabilities, or reviving those which time has extinguished. The obligation of the copartners to pay their debts due to creditors is not affected by the dissolution. It remains the same, and the discharge of this obligation is not rightly denominated a power. It is simply the discharge of an existing liability, and its effect after dissolution, upon the copartner, is limited to the appropriation of the effects of the firm to that extent. The powers which survive incidentally to the copartners after dissolution are those necessary to the final adjustment and

liquidation of the affairs of the concern. In *Darling* v. *March*, (22 *Maine Rep.* 184,) Shepley, J. gives the effect of the dissolution, in these words : "The dissolution operates as a revocation of all authority for making new contracts. It does not revoke the authority to arrange, liquidate, settle and pay those before created. For these purposes each member has the same power as before dissolution. If an account existing before the dissolution be presented to one of the former partners, he may decide whether it should be paid or not, even though it be a disputed claim. He may decide whether due notice has been given on commercial paper, and may make or refuse payment accordingly. The waiver of demand and notice is but a modification of an existing liability by dispensing with certain testimony which would otherwise be required," &c. This authority results from the nature of a copartnership which has engagements that cannot be fulfilled during its continuance, and which in many and perhaps most cases, must be fulfilled from moneys realized from the collection of debts and the conversion of assets after dissolution. In respect to their creditors copartners, after dissolution, are joint debtors, and nothing more. What the joint makers of a promissory note may not do to enlarge, prolong or continue existing liabilities, or to create a new one in regard to the debt, copartners after dissolution may not do. And whoever makes a promise or an acknowledgment either orally, in writing, or by a payment of principal or interest, which is to have the effect to rescue a debt from the force of the statute of limitations must be the party to be charged or be duly authorized by the person to be charged. For these reasons I think that if the debt in controversy in this action became due more than six years before its commencement, the defendant Gardner is discharged from his liability, and as to him the action cannot be maintained.

Was the debt so due and payable ? If so, how and when did it become so due and payable, and by what means, whether by force of the contract itself, or by force of some

act done by the parties, or some of them, outside of the contract, and in conformity with its terms express or implied ? The contract exists in the form of a receipt for one thousand dollars placed to the credit of the plaintiff upon the books of the defendant, at six per cent interest. The written paper is silent as to the time of repayment ; indeed it does not speak of repayment at all ; but as it was not to be applied in the payment of a debt or to any designated use, but was placed on the books of the defendants' firm to the credit of the plaintiff at six per cent, the implication is that it was to be repaid sooner or later, with the accruing interest. It seemed to be conceded upon the argument, and indeed I can perceive no other sensible interpretation to be put upon it, than that it was a loan or deposit of money, to be repaid on demand with the interest. In *Wenman* v. *The Mohawk Insurance Co.* (13 *Wend.* 267,) it was treated as a question of intention to be gathered from the written contract ; and so also in *Sweet* v. *Irish,* (36 *Barb.* 467,) where we had occasion to examine it. The acts of the parties can admit of but one construction. The plaintiff intended to put his money at interest, and for that purpose left it with Slate, Gardner & Howell. They, on the other hand, intended to use the money for business purposes, where it would be productive, and from which use they would be able to remunerate the plaintiff with interest at the rate designated in the instrument. Neither of them intended it should be due and payable presently, because that would defeat the purposes which both lender and borrower intended to effect. It was either payable presently, and the lender had a right of action therefor immediately and without the performance of any precedent condition, or it was not payable until an actual demand. And if the intention of the parties, signified by what they did is to govern, there cannot be any doubt that they meant the loan to be one on time ; time not defined in the written contract, but by an actual demand of payment thereafter. The case of *Merritt* v. *Todd,* (23 *N. Y. Rep.* 28,)

wrought as great a change in what had theretofore been deemed by the profession as the law of promissory notes, payable on demand with interest, as the case of *Van Keuren* v. *Parmelee* wrought upon the law of partnership and the right of one copartner to bind the other after dissolution. In the former case the court were brought to determine between two alternatives in regard to notes payable on demand with interest—whether the demand might be made at any time, so as to charge the indorser, or whether he is discharged unless the demand be made with due diligence ; diligence in the sense of the commercial law, and without reference to time, credit or indulgence given to the maker ; but diligence having reference solely to the convenience of the holder, making all proper allowance for the residence of the parties, whether in the same town or elsewhere, and the distance they reside from each other.   The court reached this conclusion, and so determined that a promissory note payable on demand with interest is a continuing security ; and an indorser remains liable until an actual demand, and the holder is not chargeable with neglect for omitting to make such demand within any particular time.   Had the obligation of Slate, Gardner and Howell taken the form of a note payable to William H. Payne or order on demand, with the interest, which would have been an immaterial change so far as the time of payment is concerned ; and had indorsed the same over to a third person, Payne, upon notice of presentation and non-payment in June, 1861, would have become fixed, and his liability as indorser have become complete at that time, because then for the first time, upon the authority of *Merritt* v. *Todd,* the note would have become due and payable.

*Howland* v. *Edmonds,* decided in the court of appeals in March, 1862, and reported in 23 *Howard's P. R.* 152, does not conflict with *Todd* v. *Merritt.*   That was not a loan of money, nor was it a loan on interest expressed in the contract. It was upon a stock note given to a mutual insurance com-

pany, as part of its capital, payable "in such portions and at such time or times as the directors of the company may, agreeably to their act of incorporation, require." It is distinguishable in its material features from the note in *Merritt* v. *Todd.* The opinion, after stating the general rule that a note payable on demand may be prosecuted immediately, the suit being a sufficient demand, and that any other similar expressions used, as on request, or on being called upon, the law is the same, and no demand is necessary before suit brought, proceeds in this significant language. "When the thing promised is the payment of a sum of money no actual demand will in general, as we have said, be necessary, notwithstanding the terms of the contract ; but it is, nevertheless, in the power of the parties so to frame their engagements as to make a preliminary demand essential. And so, likewise, though there be nothing in the terms of the instrument to take the case out of the general rule, the attending circumstances and the nature of the duty may be such that the words which mention a demand or request will have a special significance, and require a preliminary demand to be made." This is precisely what is asserted in *Merritt* v. *Todd,* and what is claimed in the case under consideration. Judge Denio refers to *The Goshen Turnpike Co.* v. *Hurtin,* (9 *John.* 217,) which was an action upon a promissory note given to the company for the value of five shares of its capital stock, payable in such manner and proportions and at such time and place as the plaintiffs should from time to time require. Also *The Dutchess Manufacturing Co.* v. *Davis,* (14 *John.* 238,) which was an action on a subscription to the stock of the plaintiff's company payable in the same manner.

It seems to me that in receding from the rule which heretofore prevailed upon this class of notes in respect to the indorser, the courts must also recede from it in regard to the maker. It would be contradictory and absurd to say that such a note is due and payable immediately and without any demand, for the purpose of maintaining an action against

the maker, but that in order to charge the indorser it is not due and payable until an actual demand is made of payment from the maker. The courts must be prepared to adopt the necessary results of their own decisions, which are designed to be rules of action for the government and determination of all cases falling clearly within their principles. If the plaintiff's money had been deposited in a banking incorporation, and upon a receipt or certificate similar in all respects to that in this action, the money would not have become due and payable, and no action could have been maintained to recover it until after an actual demand and refusal. (*Downes* v. *Phœnix Bank of Charlestown,* 6 *Hill,* 297, *and the authorities there referred to.*) I am unable to find any distinction between the two cases.

The judgment should be affirmed.

[DUTCHESS GENERAL TERM, May 11, 1863. *Brown, Scrugham* and *Lott,* Justices.]