[No. 1145.]

## O. T. BARBER, RESPONDENT, *v*. GEORGE GILLSON, APPELLANT.

DISSOLUTION OF COPARTNERSHIP—RELATION OF PARTNERS—SURETY, AND PRINCIPAL DEBTOR—PAYMENT OF INDEBTEDNESS.—Upon the dissolution of a copartnership where there is an agreement that one partner assumes and will pay all the debts of the firm, he thereby becomes the principal debtor, and the other partner becomes his surety, as between themselves and all others dealing with them with knowledge of the facts, and the surety has the right to protect himself by settling the indebtedness for which he is liable, at any time, whether it is due or not.

IDEM—PAYMENT AFTER COMPROMISE.—If the principal debtor had made a compromise with the creditors of the firm, then the surety could not recover from the principal the amount thereafter paid by him to the creditors in procuring a release of his own liability.

IDEM—RELEASE FROM CREDITORS.—Upon a review of the evidence : *Held*, that Barber, as surety, was entitled to recover from Gillson, the principal debtor, whatever amounts he may have paid on account of the firm indebtedness regardless of the question whether he procured his own release thereby.

IDEM—VALUE OF NOTES—MEASURE OF DAMAGES.—The surety surrendered certain notes, executed in his favor by his copartner, to the creditors of the firm in order to release himself from liability : *Held*, in an action by the surety against his copartner, that the measure of damages, which he is entitled to recover, is the face value of the notes surrendered. His loss is not to be measured by the ability of his copartner to pay.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The instructions given and refused in this case were quite numerous. Among others the following were given at the request of plaintiff:

1. If the jury believe from the evidence that at the time of the dissolution of copartnership between plaintiff and defendant, on the twenty-fifth of February, 1881, the defendant promised to pay all the debts of the firm of Gillson & Barber in consideration of the sale and delivery by plaintiff to defendant of plaintiff's interest in the property mentioned in the bill of sale, from plaintiff to defendant, and introduced in evidence, and in the deed mentioned in the complaint, and if you further believe that on or about the thirty-first day of May, 1881, the said defendant had not paid said indebtedness, and that double the amount of the face value of the notes mentioned in the complaint of said indebtedness then remained unpaid, and that on or about that day and while said amount of said indebtedness remained unpaid, the said plaintiff, in order to procure from the creditors of the firm of Gillson & Barber his individual release and discharge from said indebtedness so remaining unpaid, surrendered to said creditors the said notes, and that in consideration thereof the said creditors did release and discharge the said plaintiff from said indebtedness, and that said indebtedness, was due and payable before the commencement of this action, then your verdict should be for the plaintiff for the sum of six thousand two hundred and twenty-eight ($6,228) dollars, even though you should believe that said indebtedness was not due at the time plaintiff, Barber, surrendered said notes.

5. If you believe from the evidence that one of the terms of the dissolution of the copartnership between plaintiff and defendant on the twenty-fifth of February, 1881, was that said defendant should assume and pay all of the debts of said firm of Gillson & Barber, then you are instructed that the plaintiff, Barber, had the right to pay and discharge said indebtedness in whole or in part without waiting for any demand upon him by any of the creditors of said firm so to do.

The court refused to give the following instructions, among others asked by the defendant:

3. To entitle the plaintiff to recover you must be satisfied from the evidence that the notes in question were surrendered by him to the creditors, and by them received and accepted in payment in whole or in part of the indebtedness of Gillson & Barber, and in this connection you are further instructed that by payment is meant a discharge of the obligations of Gillson & Barber to the creditors in whole or in part, and unless you are satisfied from the evidence that the notes were surrendered by Barber and received by the creditors in payment of Gillson & Barber's obligation, and that they were intended to operate and did operate to discharge Gillson from the payment in whole or in part of such indebtedness, then your verdict must be for the defendant.

4. You are further instructed that the mere release of Barber from his individual liability as a member of the firm of Gillson & Barber did not necessarily operate as a payment in whole or in part of the debts of Gillson & Barber, nor did it necessarily operate to discharge Gillson from such debts, for if at the time of such release Gillson was liable as a member of the firm of Gillson & Barber, and if he was further liable as between himself and Barber by reason of an agreement between them, to pay individually the debts in question and to save and hold Barber harmless from such payment, then in that case such release did not operate to discharge Gillson or to pay, so far as Gillson was individually concerned, such debts.

5. You are further instructed that if at the time Barber surrendered the notes in question to the creditors of Gillson & Barber, Gillson had agreed to pay the debts in question and to indemnify and hold Barber harmless from such payment; and if you further believe that at the time of such surrender by Barber, Gillson was negotiating with the creditors for the compromise, settlement and payment of such debts and afterward and before suit such negotiations were consummated and Gillson did compromise, settle and

pay such debts in pursuance of the negotiations, then and in that case the release of Barber would not operate to pay said debts so far as Gillson was concerned and you must find a verdict for defendant.

6. You are further instructed that if the evidence satisfies your mind that Gillson & Barber dissolved the partnership theretofore existing between them by an agreement and understanding that as between them Gillson should pay the debts of Gillson & Barber, including the debts in question, and that Gillson should have the right and be charged with the duty of collecting the debts due to the firm, and should pay or discharge the liabilities of the firm, including those in question, then you are instructed that Barber had no authority or right pending such agreement to interfere with the unsettled affairs of Gillson & Barber or to compromise or settle with the creditors of the firm and that the power to manage the affairs of the firm including the power and right to compromise and settle with the creditors, belonged exclusively to Gillson, and that any interference therein by Barber was contrary to such agreement and wholly unauthorized. And in this connection you are further instructed that any loss, damage or injury sustained by Barber which was the consequence of his, such unauthorized interference must be borne by him and cannot be recovered against Gillson in this action.

9. You are further instructed that if you believe from the evidence that at the time of the dissolution of the firm of Gillson & Barber they were indebted, and it was agreed between them that Gillson should pay the debts, and it was understood that such payment was not to be made immediately, then as between Gillson & Barber, Gillson became and was an indemnitor merely, that is he was obligated to hold Barber harmless from the payment of any such debts, and if Gillson did fulfill the contract on his part, no matter how, whether by paying in full or by compromising such debts or by obtaining an extension of time and afterward compromising or paying, in that case Barber is not entitled to recover for the value of the notes surrendered, although

he may have surrendered them for the express purpose of procuring his release and although he procured his release in consideration of such surrender.

*Robert M. Clarke*, for Appellant :

I. It was error not to permit defendant to show that the debts were not to be paid immediately. If not to be paid immediately, Barber was clearly an intermeddler, and his act was in violation of his agreement. The suit was premature because the notes were not due when the action was commenced.

II. The actual value of the notes surrendered is the true measure of damages, and it was error to exclude proof of such value. Barber did not pay money, but delivered property, to-wit : Promissory notes, and the cash value of the property delivered measures the injury.

III. A release to be of binding force must be in writing subscribed by the parties and under seal. (*Davis* v. *Bowker*, 1 Nev., 487.) The release in question was inoperative until its conditions were fulfilled by Gillson in the execution and delivery of the notes, June 27, 1881. It was in fact an agreement of mutual and dependent covenants to be signed by both parties thereto and in no event to operate as a release until the conditions were performed. ·

IV. Defendant had the sole right to pay or settle the firm debts, and plaintiff in assuming to pay them was an intermeddler. Defendant was a mere indemnitor and plaintiff could not complain unless compelled to pay. Unless plaintiff was compelled to pay, defendant's contract was not broken. The surrender of the notes was not under duress or compulsion, but was purely voluntary. Barber having transferred his interest, had no right to make voluntary payment. His agreement of sale gave Gillson the exclusive right. (Civil Code Cal., 2460, 2465, 2772, 2778 ; Par. on Part., 403, 407, 434, 437 ; *Coleman* v. *Lansing*, 65, Barb, 55, 57 ; *Palmer* v. *Dodge*, 4 Ohio St., 21.)

V. The notes were not surrendered in payment of the debts of Gillson & Barber, (nor did they so operate) but to

procure Barber's release. (1.) But Gillson did not agree and was not obliged to procure Barber's release. (*Coleman* v. *Lansing*, 65 Barb. 57.) (2.) Gillson did pay the debts as he agreed and thus procured Barber's release.

VI. The payment or settlement of the partnership debts was an affair of the partnership, concerning which Gillson alone had the right to act, and in this Barber did interfere without Gillson's sanction.

VII. The proofs show that Barber's action in surrendering the notes was purely voluntary and intermeddling.

*A. C. Ellis*, for Respondent :

I. After the dissolution upon the terms that Gillson was to pay the partnership debts, the relations of plaintiff and defendant, as between themselves, was that of *principal* and *surety*, though as to the creditors of the firm they were joint debtors. (Lindley on Part. 567, secs. 714, 862 ; *Millard* v. *Thorne*, 56 N. Y. 402 ; Brandt on Sureties, sec. 23 ; *McCormack* v. *Irwin*, 11 Casey, 111 ; 1 Lead. Cases in Eq. 145 ; *Aldrich* v. *Cooper*, Am. note, Lead. Cases in Eq. vol. 2 ; *Rogers* v. *Maw*, 15 M. &. W. 444 ; *Smith* v. *Shelden*, 35 Mich. 42 ; *Butler* v. *Birkey*, 13 Ohio St. 514.)

II. The surety, Barber, had the right to pay at any time after the debts became due without waiting to be called upon so to do, much less without waiting to be sued, and for the accumulation of costs. (*Craig* v. *Craig*, 5 Rawle, 91 ; *Williams, Administrator* v. *Williams*, 5 Ohio, 444 ; *Mauri* v. *Hefferman*, 13 John's, 58-75 ; *Odlin* v. *Greenleaf*, 3 N. H. 270 ; *Goodall* v. *Wentworth*, 20 Me. 322 ; *Fraser* v. *Good*, 3 Rich. 199 ; *Babcock* v. *Hubbard*, 2 Conn. 536 ; *Ward* v. *Henry*, 5 Conn. 596 ; Brandt on Suretyship, secs. 176, 177, 296.

III. He may pay before the debt is due, and sue the principal after maturity. Brandt on Suretyship, secs. 176-177 ; *Craig* v. *Craig*, *supra*.

IV. The surety, Barber, may waive the defense, of which Barber was ignorant, if there was any, that he has been discharged by time given to the principal. (Brandt

on Suretyship, secs. 296–300.)     There was no considera-
tion for this extension ; it was *nudum pactum.*  (Brandt,
296, 2 Lead. Case. in Eq. 2011.)

V. Barber as such surety could make payment in any
way—in land, merchandise *or his own notes,* and may main-
tain assumpsit against his principal for money paid, laid
out and expended, etc.     (Brandt on Suretyship, secs. 178,
181, 249, 250, 261 and cases there cited ; *Barney* v. *Seeling,*
2 Wend. 482; 11 John. 519; 1 Hill (S. C.) 237 ; 15 M &
W. 449.)

On the question of payment by surety.  (*Doolittle* v.
*Dwight,* 2 Met. 561; *Bone* v. *Torrey,* 16 Ark. 83 ; *Mims* v.
*McDowell,* 4 Ga. 182 ; *Pearson* v. *Parker,* 3 N. H. 366 ;
*Elwood* v. *Deifendorf,* 5 Barb. 398 ; *White* v. *Miller,* 47 Ind.
385 ; *Hommell* v. *Gamewell,* 5 Blackf. 5 ; *McVicker* v. *Royce*
71 U. C. Q. B. 529 ; *Barclay* v. *Gooch,* 2 Esp. 570 ; *Rogers*
v. *Maw,* 15 M. & W. 444.

VII. The release by the creditors of the principal debtor,
Gillson, does not discharge the surety, Barber, if the
creditors at the time reserve the right to pursue the surety.
(Brandt, sec. 123 ; *U. S.* v. *Howell,* 2 Am. Lead. Cas. 372 ;
*Boaler* v. *Maher,* 19 C. B. (N. S.) 76 ; *Rucker* v. *Robinson,*
38 Mo. 154 ; *Kearsley* v. *Cole,* 16 M. & W. 128. ; *Morse* v.
*Huntington,* 40 Vt. 488–496 ; *Sohier* v. *Loring,* 6 Cush. 537;
*Hagey* v. *Hill,* 25 P. F. Smith, 108 ; *Hunt* v. *Knox,* 34
Miss. 655 ; *Bailey* v. *Edwards,* 4 E. B. & S. 760 ; *Nichols* v.
*Norris,* 3 Barn. & Ad. 41 ; *Claggett* v. *Salmon,* 5 Gill &
John. 314; *Bangs* v. *Strong,* 10 Paige 11 ; *Willis* v. *Decas-
tro,* 4 C. B. 215 ; *Yates* v. *Donaldson,* 5 Md. 389 ; *Camp-
bell* v. *Booth,* 8 Md. 107.)

*R. M. Clarke* for Appellant, in reply :

I. Barber agreed that Gillson should settle and pay the
debts of the firm.  By the agreement Barber surrendered
all right to make settlement with the creditors and vested
the exclusive right in Gillson, and when he attempted to
exercise the right so surrendered he violated his agreement.
(Civil Code of Cal., Sec. 2460 ; *Palmer* v. *Dodge,* 4 Ohio st.,

30 ; Par. on Part., 388 ; *Hilton* v. *Vanderbilt*, 82 N. Y., 592.)

By the Court, BELKNAP, J.:

The parties hereto composed a copartnership of merchants. Upon the twenty-fifth day of February, 1881, the copartnership was dissolved by mutual consent. Appellant purchased from respondent his interest in the property and effects, giving promissory notes therefor aggregating in value the sum of six thousand two hundred and twenty-eight dollars. In consideration of the transfer, appellant assumed the outstanding indebtedness of the firm, amounting to upwards of forty thousand dollars. This indebtedness remained unpaid until the latter part of the month of May succeeding, at which time appellant entered into negotiations with the view of obtaining a settlement by compromise. At this time respondent, at the request of the creditors, and in order to procure his personal release from the firm indebtedness, surrendered the promissory notes to them. Thereafter he brought this action to recover, as damages, the sum of six thousand two hundred and twenty-eight dollars, the value of the notes, exclusive of interest. He recovered judgment. Defendant appeals therefrom, and from an order overruling a motion for new trial.

The questions of law presented for review arise principally upon the rulings of the court in giving and refusing instructions requested. A determination of the legal *status* of the parties, and of their relative rights and liabilities, will determine the questions arising under the rulings in this regard. The dissolution of the copartnership, and the agreement that Gillson should pay the debts of the firm, rendered Barber the surety of Gillson, as between themselves and all others dealing with them with knowledge of the facts. (Brandt, Sur. sec. 23, and cases there cited.) As such surety Barber had the right to protect himself by settling at any time the indebtedness for which he was liable. Upon this subject Chief Justice Gibson said : "As to the position taken, that payment before the bonds fell

due would be essentially voluntary, it is proper to remark that the principle was ruled differently in *Armstrong* v. *Gilchrist*, 2 Johns. Cas. 429, where it was held that a guarantee of a note, who had compromised and paid it for his own indemnity before it had become due, was entitled to recover. That a surety is to wait until payment is extorted of him is not pretended ; but it is said that payment before maturity is necessarily voluntary, and that eventual liability is not equivalent to a precedent request. There is no authority for that, and it seems not to be defensible on principle. Why may not a surety take measures of precaution against loss from a change in the circumstances of his principal, and accept terms of compromise before the day which may not be obtainable after it. He may ultimately have to bear the burden of the debt, and may therefore provide for the contingency by reducing the weight of it. Nor is he bound to subject himself to the risk of an action by waiting till the creditor has a cause of action. He may, in short, consult his own safety, and resort to any measure calculated to assure him of it, which does not involve a wanton sacrifice of the interest of his principal." ( *Craig* v. *Craig*, 5 Rawle 98 ; *Williams' Adm'rs* v. *Williams*, 5 Ohio 444 ; *Odlin* v. *Greenleaf*, 3 N. H. 270 ; *Goodall* v. *Wentworth*, 20 Me. 322 ; Brandt, Sur. secs. 176–177.) The instructions allowed were in accordance with these views.

At the trial, the court overruled an offer of defendant to show that at the time of the assumption of the firm indebtedness by Gillson, neither of the parties contemplated that he should pay the debts immediately. Under the authority of the foregoing and all other cases to which we have been referred, it was immaterial whether the indebtedness, as between the parties themselves or the creditors, was due or not. Nor was Barber's conduct in compromising the claims against himself, an interference with the affairs of the partnership contrary to the contents of the notice of dissolution. That notice provided that all indebtedness due the firm should be paid to Gillson, and that all claims against the

firm would be paid by him. But Barber's settlement was not for the firm, but for himself.

It is claimed that Gillson compromised the firm indebtedness before Barber surrendered the notes to the creditors. If this position of appellant is correct, no recovery can be had against him. In one view of the testimony, Gillson settled with the creditors about the twenty-sixth day of May, 1881 ; in another view, the settlement was not made until the latter part of the month of June. If the settlement occurred in the month of May, Barber was expressly excluded from its operation by the terms of the written release. He was then still liable, and was justified in procuring his own release. In the meantime, and before the adjustment of matters with the creditors by Gillson in the month of June, Barber surrendered the notes. So, whether Gillson's compromise was effected in the month of May or in the month of June, Barber was justified in his action.

Appellant objected to the admission in evidence of a paper writing purporting to release Barber from the payment of the firm indebtedness, upon the ground that the instrument is not a release, because not under seal. If it is not a release, (a point we do not decide), and was treated as such at the trial, this fact could not have prejudiced appellant's case. It is, at least, a receipt for the notes surrendered, and was admissible for this purpose, for the reason that Barber was entitled to recover from Gillson whatever he may have paid on account of the firm indebtedness, whether he did or did not procure his release thereby.

Another question presented is whether Gillson should have been allowed to have shown the value of his own promissory notes. The compensation to be recovered must be the actual loss sustained by the plaintiff. He gave full consideration for the notes. In consequence of the failure of defendant to pay the firm indebtedness he has been deprived of them. He lost the value which they represented and this is the measure of his recovery. His loss is not to be measured by the ability of defendant to pay. If this

were so, no recovery in damages could be had against an insolvent.

The judgment and order of the district court are affirmed.