HALL & RUCKEL v. JOHNSTON, HILL & CO.

No. 243.

**1. Retiring Partners—Firm Debts—Release.**—Members of a firm sold their interest in the goods of the firm, the grantees assuming its debts. This sale and assignment was known to a creditor. *Held*, that the creditor could not by agreement with the vendees extend the time of payment of his debt without discharging the retiring partners from responsibility for the debt. They occupied the relation of sureties.

**2. Consideration—Extension of Time.**—It is well settled that in order to release a surety an agreement to extend the time of payment must be based upon a sufficient consideration. And a plea setting up an oral agreement for such extension as a discharge is not good unless a consideration be alleged.

**3. Practice.**—Defense pleaded only one agreement to extend time; proof was made, and charge submitted two agreements, either if found was a defense. *Held*, error: the charge should have submitted but the one alleged.

**4. Application of Payments.**—The general rule is, that when a debtor owes two debts to the same creditor, one secured and the other unsecured, and makes a payment without directing its application, the creditor may apply it to the unsecured debt. See illustration.

APPEAL from Lampasas. Tried below before Hon. W. A. BLACKBURN.

*Mathews & Wood,* for appellants.—1. The mere fact that on the dissolution of the firm of Johnston, Hill & Co. the new firm of Belcia & Potts, for a consideration paid by Johnston and Hill, assumed the payment of the debts of Johnston, Hill & Co., L. E. Belcia being a member of both firms, would not change the liability of Johnston and Hill from that of principals to that of sureties. Lutterloh v. McIlhenny, 74 Texas, 73; Pars. on Part., 3 ed., 460.

2. There being no allegation in the pleadings that plaintiff made any agreement with Belcia & Potts to extend the time of payment, and no allegation that plaintiff received from any one any consideration for an extension, the charge complained of in this assignment is erroneous, because it is a charge upon issues not made by the pleadings. Loving v. Dixon, 56 Texas, 75; Markham v. Carothers, 47 Texas, 22; Railway v. Terry, 42 Texas, 451.

3. If on the dissolution of the firm of Johnston, Hill & Co. their indebtedness to plaintiff was assumed by Belcia & Potts, who also contracted debts with plaintiff, and afterwards remitted moneys to plaintiff, without designating how the same should be applied, the plaintiff had the right to apply the same to the extinguishment of the indebtedness due from Belcia & Potts to plaintiff. The plaintiff was not under this state of facts required to apply the payment to the indebtedness assumed, as charged by the court. Story on Part., secs. 157, 158; Kohn Bros. v. Washer, 64 Texas, 131; Compress Co. v. Brick Manf. Co., 64 Texas, 338; Lutterloh

v. McIlhenny, 74 Texas, 73; 1 Field's Law. Briefs, secs. 149, 150, 156, and authorities; Reese v. Medlock, 27 Texas, 124; Nightengale v. Chaffee, 11 R. I., 609; Keene v. Dufresne, 3 Serg. & R., 233; Olcott v. Rathbone, 5 Wend., 449.

*W. B. Abney*, for appellees.— 1. When one or more members of a firm retire from the firm, and the remaining member and a third party succeed to the firm assets, and as part consideration therefor assume all debts of the old firm, and these facts are known to the creditor, the members so retiring will be considered in law sureties for the new firm. Brandt on Sure., sec. 23; 17 Am. and Eng. Encycl. of Law, 1129, 1130; Colgrove v. Tallman, 23 Am. Rep., 90; Smith v. Shelden, 24 Am. Rep., 529.

2. If on sale by Belcia to Paul M. Potts, plaintiff did not agree to release L. E. Belcia, then any subsequent agreement for extension of time made with Paul M. Potts would also be an agreement to extend for the firm of Belcia & Potts; but if on such sale plaintiff did agree to accept Paul M. Potts and release Belcia, then the error complained of would be harmless, and no ground for reversal. McClane v. Rogers, 42 Texas, 220; Loper v. Robinson, 54 Texas, 516; White v. Boone, 71 Texas, 714; 2 Lindl. on Part., *241; Pars. on Part., 458.

KEY, ASSOCIATE JUSTICE.—This suit was instituted by William H. Hall against A. J. Hill, T. J. Johnston, and L. E. Belcia, comprising the firm of Johnston, Hill & Co., appellant alleging that he was doing business under the name of Hall & Ruckel. The suit is for a balance alleged to be due on an account for merchandise. The plaintiff dismissed as to the defendant Belcia, and verdict and judgment were rendered in favor of the other defendants. The answer of these defendants is quite voluminous, but its nature will be disclosed as this opinion proceeds.

The testimony shows that after the account in question was created, Johnston and Hill retired from the firm, selling their interest in the partnership to Paul M. Potts; that Belcia and Potts continued the business as partners; that as part of the consideration for the sale Belcia & Potts assumed the payment of all the indebtedness of Johnston, Hill & Co., including the debt sued for.

It is contended by appellees: 1. That appellant agreed to accept Belcia & Potts for the payment of this debt, and released appellees. 2. That after appellees sold to Belcia & Potts the latter firm was dissolved, Potts agreeing to pay this debt; that appellant entered into an agreement with Potts, by which the latter was to pay the debt in installments of $150 per month, thereby extending the time for its payment, it being then past due.

It was also pleaded that Potts thereafter made certain payments, which should have been credited on said debt.

The most important question in the case is, whether or not, when a partner retires from a firm, selling his interest in the assets to the other partner and another person who takes the retiring partner's place, and there is an agreement between them by which the new firm assumes the liabilities of the old firm, such retiring partner is entitled to the rights of a surety as against an antecedent creditor who has notice of all the facts.

On this question there is considerable conflict of authority. The modern English doctrine appears to be against the proposition; and there are some American cases to the some effect. 17 Am. and Eng. Encycl. of Law, 1131. There are other American cases which support the affirmative of this proposition, and, in our opinion, they are founded upon correct principles of equity.

The case of Colgrove v. Tallman, 67 New York, 95 (23 American Reports, 90), was an action upon a promissory note executed by H. C. Barnes & Co. After its execution, Tallman, who was a member of the firm, sold all of his interest in the partnership property to the other partners, and the latter agreed to assume and pay all the firm's debts. Afterward Tallman notified the plaintiff, who then held the note, of the agreement between him and Barnes, and requested him to proceed and collect the note immediately. Barnes was then solvent and able to pay; he afterwards became insolvent. The question in the case was whether or not, under these circumstances, Tallman was discharged. The opinion in the case was prepared by Judge Folger, and it was held that Tallman's relation was changed from that of principal to surety, and that he was discharged, because the plaintiff failed to sue when he requested it. In the course of the opinion it is said:

"And what comes close to this case in principle, and shows what a creditor must care for equities growing from new relations, arising out of changes made without his assent, is this: If several lots are mortgaged, and after that have come to different owners, and the mortgagee releases some of them, he may not enforce against those not released more than a proportionate amount of the mortgage debt; the creditor, says the chancellor, owes a duty to his debtors not to impair their rights as against each other. Stevens v. Cooper, 1 Johns. Ch., 425. This rule has been reiterated, with the requirement that the creditor must have notice of the change sufficient to put him on inquiry. Howard Ins. Co. v. Halsey, 8 N. Y., 271; and see Guion v. Knapp, 6 Paige, 35; Stuyvesant v. Hall, 2 Barb. Ch., 151. The reason is, that the parcels sold have become as sureties to the parcels not sold. The latter are as principals. A release of them is as a release of a principal debtor, which discharges the surety. To the same end is the rule, that a creditor having a lien upon two funds will be forced, in favor of an after-lienor having a claim upon one of the funds only, to seek his debt from the other fund. Cheesebrough v. Millard, 1 Johns. Ch., 409. And if he does aught to prejudice the claim upon the one fund of the after-

lienor, after notice of the lien, he will to that extent be cut off from his own claim upon that fund.

" In equity, then, the relations of the parties to this case are, that Barnes is the principal debtor, Tallman his surety for the payment of the debt, and Colgrove their creditor, of one as the principal debtor, of the other as surety. These relations existed as soon as Tallman gave notice to Colgrove of the dissolution of the partnership and the agreement between him and Barnes. Each of them was, after that, affected by all the rules applicable to persons in those relations."

Smith v. Shelden, 35 Michigan, 42 (24 American Reports, 529), was a similar case. The opinion was written by Chief Justice Cooley, and in reference to this question he says: " For a determination of the question whether Smith and Owen were entitled to the rights of sureties, it seems only necessary to point out the relative position of the several parties as regards the partnership debt. Place, by the arrangement, had agreed to pay this debt, and as between himself and Smith and Owen, he was legally bound to do so. But Smith and Owen were also liable to the creditors equally with Place, and the latter might look to all three together. Had they done so, and made collections from Smith and Owen, these parties would have been entitled to demand indemnity from Place. This we believe to be a correct statement of the relative rights and obligations of all.

" Now a surety, as we understand it, is a person who, being liable to pay a debt or perform an obligation, is entitled, if it is enforced against him, to be indemnified by some other person, who ought himself to have made payment or performed before the surety was compelled to do so. It is immaterial in what form the relation of principal and surety is established, or whether the creditor is or is not contracted with in the two capacities, as is often the case when notes are given or bonds taken; the relation is fixed by the arrangement and equities between the debtors or obligors, and may be known to the creditor, or wholly unknown. If it is unknown to him, his rights are in no manner affected by it; but if he knows that one party is surety merely, it is only just to require of him that in any subsequent action he may take regarding the debt, he shall not lose sight of the surety's equities.

" That Smith and Owen were sureties for Place, and the latter was principal debtor after the dissolution of the copartnership, seems to us unquestionable. It was then the duty of Place to pay this debt and save them from being called on for the amount. But if the creditors, having a right to proceed against them all, should take steps for that purpose, the duty of Place to indemnify, and the right of Smith and Owen to demand indemnity, were clear. Every element of suretyship is here present, as much as if, in contracting an original indebtedness, the contract

itself had been made to show on its face that one of the obligors was surety merely. As already stated, it is immaterial how the fact is established, or whether the creditor is or is not a party to the arrangement which establishes it."

And it was held that as time for the payment of the debt was extended to Place, Smith and Owen were released.

Mr. Brandt, in his work on Suretyship and Guaranty, second edition, section 36, adopts the views announced in these opinions as correct. See, also, 17 Am. and Eng. Encycl. of Law, 1129, 1130; Barber v. Gilson, 18 Nev., 89; Millerd v. Thorne, 56 N. Y., 402; Bank v. Waterman, 134 Ill., 46; Wilde v. Jenkins, 4 Paige, 481; Gates v. Hughes, 44 Wis., 332; Williams v. Boyd, 75 Ind., 286; Gurley v. Tyler, 15 S. W. Rep., 731.

The same principle is often applied in determining the rights of mortgagor and mortgagee, when the former has sold the mortgaged property to a third person who, as between them, has assumed payment of the debt.

Considering this subject, a standard author says: "When a grantee thus assumes payment of the mortgage debt as a part of the purchase price, the land in his hands is not only made the primary fund for payment of the debt, but he himself becomes personally liable therefor to the mortgagee or other holder of the mortgage. The assumption produces its most important effect by the operation of equitable principles, upon the relations subsisting between the mortgagor, the grantee, and the mortgagee. As between the mortgagor and the grantee, the grantee becomes the principal debtor primarily liable for the debt, and the mortgagor becomes a surety, with all the consequences flowing from the relation of suretyship. As between these two and the mortgagee, although he may treat them both as debtors, and may enforce the liability against either, still, after receiving notice of the assumption, he is bound to recognize the condition of suretyship, and to respect the rights of the surety in all of his subsequent dealings with them." 3 Pome. Eq. Jur., sec. 1206. See, also, Calvo v. Davies, 73 N. Y., 211; Marshall v. Davies, 78 N. Y., 414; Palmer v. Purdy, 83 N. Y., 144; Murry v. Marshall, 94 N. Y., 611; Wilcox v. Campbell, 106 N. Y., 325; George v. Adams, 60 Md., 26; Union Stone and Machine Works v. Caswell, Book 16 Lawyers Ann. Rep., 85; Union Life Ins. Co. v. Hanford, 143 U. S., 187.

It is not necessary to go as far as Colgrove v. Tallman, supra, and hold, that in case like the one under consideration, the failure of the creditor to sue within a given time or when requested will discharge the debtor; but our conclusion is, that if appellees transferred their interest in the assets of the firm of Johnston, Hill & Co. to Belcia & Potts, upon an agreement that the latter firm would pay the debt in question, and appellant had notice of these facts, he could not by a binding contract, not

assented to by appellees, extend the time of payment without releasing them. Such affirmative action by the creditor is much more inequitable than a failure to sue when requested, because in the absence of an extension of time to the other debtor, the one asserting the rights of a surety can pay the debt and secure the right, by subrogation, to proceed immediately against his codebtor for reimbursement.

We concur in the conclusion reached in the Michigan case from which we have quoted, and hold that the ruling of the court below, which followed the doctrine announced in that case, was correct.

Appellees pleaded, that after they had sold out to Belcia & Potts, and the latter had assumed the payment of the debt in question, and after Belcia & Potts had dissolved and Potts had agreed to pay this debt, appellant, knowing these facts, agreed with Potts, as herein before stated, to extend the time of payment; and appellees claim that by reason of said last agreement they were discharged.

Appellant, in addition to his general demurrer thereto raising the question just decided, excepted specially to this answer, because, as to him, it did not show that there was any consideration for said agreement. The action of the court in overruling this exception is assigned as error.

This assignment is well taken. As it does not appear that the agreement to extend the time of payment was in writing, it does not import a consideration; and it was therefore necessary, in order to show a binding contract, for appellees to allege and prove that the agreement was founded upon a sufficient consideration.

In so far as the answer sets up a novation—an agreement by appellants to accept Belcia & Potts, or Potts individually, as paymasters, instead of the old firm—it discloses a sufficient consideration. Securing the liability of another person in lieu of or in addition to the original debtor is a good consideration. But the pleading in question does not show that by the alleged agreement any one became liable for the debt who was not already obligated to pay it; and it does not, in terms, aver that said agreement was founded upon a consideration.

It is well settled, that in order to release a surety, an agreement to extend the time of payment must be based upon a sufficient consideration. Burke v. Cruger, 8 Texas, 66; Pilgrim v. Dykes, 24 Texas, 383; Hunter v. Clark, 28 Texas, 159.

Appellees pleaded only one agreement to extend time. That agreement was alleged to have been made with Potts at the time of the dissolution of the firm of Belcia & Potts. But at the request of appellees, the court instructed the jury, that if such an agreement was made with either Potts or Belcia & Potts, without appellees' consent, to find in his favor.

Under their answer appellees had no right to have submitted to the jury any agreement to extend the time of payment, other than the one alleged

to have been made with Potts. Whether or not such an agreement was made with Belcia & Potts was not an issue in the case, and it was prejudicial to appellant's rights to submit that question to the jury. Railway v. Terry, 42 Texas, 451; Markham v. Carothers, 47 Texas, 22; Loving v. Dixon, 56 Texas, 75.

In regard to the application of payments, the court instructed the jury as follows:

"If the jury should find from the evidence that the firm of Belcia & Potts, upon the dissolution of the firm of Johnston, Hill & Co., did assume to pay the indebtedness of Johnston, Hill & Co. then existing, and should further find that thereafter the said Belcia & Potts did pay to said Hall & Ruckel certain moneys, without designating the particular item to which such payments should be applied; and should you further find that at the time such payments were made plaintiff knew that said Belcia & Potts had assumed the indebtedness of Johnston, Hill & Co., then I charge you that such payments should be applied to the indebtedness so assumed before indebtedness thereafter created by said Belcia & Potts."

This charge does not correctly state the law. The general rule is, that when a debtor owes two debts to the same creditor, one secured and the other unsecured, and makes a payment without directing its application, the creditor may apply it to the unsecured debt. Story on Part., secs. 157, 158; 18 Am. and Eng. Encycl. of Law, 239.

If, however, equities exist between the principal and surety which are known to the creditor, by reason of which the payment ought to be appropriated to the secured debt, the creditor will be compelled to so apply it. But in the absence of such notice, the creditor may apply the amount to either debt. Harding v. Taft, 75 N. Y., 461.

So in this case, if appellees transferred their interest in the assets of the firm of Johnston, Hill & Co., upon an agreement that Belcia & Potts, or either of them, were to pay the indebtedness of the old firm, and if the proceeds of any of these assets were paid to appellant, and he had notice of all these facts, equity will compel him to credit such payment upon the indebtedness of the old firm. For under such circumstances, the assets so transferred were held in trust for the payment of the antecedent partnership debts for which appellees were still liable. The charge given does not limit appellees' right to credits to such payments as were made from proceeds of the property transferred by them to the new firm, and for this reason was erroneous.

We do not think the court erred in allowing the witnesses Robinson and Belcia to testify to the contents of certain statements of accounts sent to Belcia & Potts and Paul M. Potts. They each stated that the statements were sent by Hall & Ruckel (appellant), and their nonproduction was sufficiently accounted for.

The other assignments relate to the verdict; but as the case must be reversed for other reasons, it becomes unnecessary to consider them.

For the errors pointed out, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered January 24, 1894.

FISHER, Chief Justice.—I agree as to the disposition of the case, but dissent as to first question discussed in the opinion.

FISHER, Chief Justice, dissenting.—I agree to the disposition made of this appeal, but dissent from the views expressed by the majority of the court in so much of the opinion that announces the doctrine that a retiring partner, upon the promise of those remaining in the firm to pay the debts of the firm for which he and they were liable, occupies, to creditors of the old firm with notice of this fact, the relation of surety only, although the creditor was not a party to such arrangement. In other words, the proposition, briefly stated, is that the retiring partner under such circumstances changes his status from that of a principal debtor to that of surety for the debts of the old firm, notwithstanding the creditors of the old firm have not assented to such change. I can not agree to this doctrine.

The two principal cases relied upon by the majority of the court as authority for its views (Colgrove v. Tallman, 67 New York, 95, and Smith v. Shelden, 35 Michigan, 42), in the main seem to base their holding upon the authority of the case of Oakeley v. Pasheller, 4 Clark & Finnelly, 207 (same case, 10 Bligh, N. S., 548). This was a decision by the House of Lords in 1836. This case was subsequently, in 1876, reviewed in Swire v. Redman, 1 Queen's Bench Division, 536. Cockburn, Chief Justice, speaking for the court, disapproves the doctrine announced in Oakeley v. Pasheller, and holds that partners can not change their relation to their creditor without his assent. This case establishes what we understand now to be the law in England.

As said in the opinion of the majority of the court, the cases in America are divided on this question; but it seems from a review of these cases, as far as examined, that those that support the opinion of the court rest in the main upon the case of Oakeley v. Pasheller, which we found is no longer authority in England.

In Whittier v. Gould, 8 Watts, 485, the court held, that upon the dissolution of a firm, an arrangement between the partners by which the debts were to be paid by one of them does not affect the liability of the others as to the creditors who knew of the arrangement.

In Finsler v. Prather, 43 Indiana, 120, in construing a statute of Indiana that authorizes the surety to notify the creditor in writing to bring

suit upon his obligation, and for failure so to do will operate as a dischage of the surety, it was held, that the provisions of the statute did not apply to a retiring partner when the remaining members of the firm assumed the debts of it. It was held that such retiring partner was not a surety that could invoke protection of the statute. The statute construed in that case is similar to the one existing in this State upon the same subject.

In Rawson v. Taylor, 30 Ohio State, 399, it is held, that a partner remains liable for all the existing debts of the firm to the same extent as if he had not retired. An agreement between him and the remaining partners, or with the new firm that succeeds, that they will assume and pay all such debts, while valid as between the partners, has no effect upon the creditors of the old firm, unless they become parties thereto.

In a recent and well considered opinion, the Supreme Court of Appeals of West Virginia lays down the doctrine, that it is not in the power of joint debtors to change by agreement among themselves their relation to their common creditors; and "as between the partners and the creditors, they were all equally bound, and no understanding and agreement between themselves could change that relation so as to impair his rights." Barnes v. Boyers, 34 W. Va., 304.

In Skinner v. Hitt, 32 Missouri Appeal Reports, 402, in effect, it is held, an agreement between partners at the time of dissolution that the continuing partners would pay all the firm debts only binds the parties making it, and does not change the relation of the retiring partner to the creditors of the firm.

The Supreme Court of the State of Washington, in the case of Wadhams v. Page & Green, 1 Washington State Reports, 421, holds that a simple agreement between partners that one of them should be discharged, although the creditor has notice to that effect, will not affect the rights of the creditor unless he is a party to such arrangement. And for thus holding, the opinion cites as authority: 30 Me., 412; 26 Barb., 461; 26 Minn., 123; 43 Iowa, 506; 5 Cor. Payne, 397; 4 Wash. C. C., 98; 10 Pa. St., 124; 39 Barb., 634; 47 Ala., 104.

The Supreme Court of the United States, in the case of Shepard v. May, 115 United States, 510, holds, that an express promise, made to the vendor by the vendee of real estate conveyed to him subject to a deed of trust executed to secure a debt, that he will discharge it, does not, without the assent of the creditor, make the vendee the principal debtor and the vendor the surety.

In the brief of the appellant in this case it appears that Colgrove v. Tallman, 67 New York, and Oakeley v. Pasheller, 10 Bligh, and Metz v. Todd, 36 Michigan, and similar cases, were relied upon as authority, and the doctrine there announced, and followed by this court in the majority opinion, was sought to be forced upon the Supreme Court of the United States, which, we have seen, announced the contrary doctrine.

So far as I have been enabled to examine the several works of the most prominent writers on the subject of partnership, they with striking unanimity agree that the retiring partner does not, by virtue of any arrangement between him and the remaining partners, change his status as a principal obligor to the creditors of the firm, although they have knowledge of such arrangement.

Story lays it down, "That the dissolution of a partnership, whether by voluntary act or will of the parties, or by the retirement of a partner, or by mere afflux of time, will not in any manner change the rights of third persons as to any past contracts and transactions with or on account of the firm; but their obligations and efficacy and validity will remain the same and be binding upon the partnership in the same manner as if no dissolution had taken place." Story on Part., 7 ed., sec. 334.

Again, in section 158, the author says: "It frequently happens that upon the retirement of one partner, the remaining partners undertake to pay the debts and to secure the credits of the firm. This is a mere matter of private arrangement and agreement between the parties, and can in no respect be admitted to vary the rights of the existing creditors of the firm."

Collyer says: "Of course, any arrangement between the partners themselves can not limit or prevent their ordinary responsibilities to third persons, unless the latter assent to such arrangement." 1 Coll. on Partnership, ch. 17, sec. 407.

Again, in volume 2, chapter 24, section 596, he says: "In order that one liability may be replaced by another, by agreement, it is essential that the person in whom the correlative right resides should be a party to the agreement, or should, at all events, show by some act of his own that he accedes to the substitution."

Mr. Parsons, in his work on Partnership (third edition), 428, in no uncertain terms states his views thus: "No dissolution of any kind affects the rights of third parties who have had dealing with the partnership, without their consent. This is a universal rule, without any exception whatever. Undoubtedly the partners may agree as they please about their joint property, and all the parts of it, and so they may about their joint obligations; and all such agreements are valid, so far as they do not affect the rights of strangers; but where they do, they are wholly void. Thus three partners may agree to-day to dissolve and to divide all the property in a certain way, specifying that one shall have this, another that, and the third that thing. Or they make such an agreement about some one or more things, and not about all. And these agreements determine the property in these things effectually as to the partners themselves. But they are all responsible in solido for the debts due by the firm, and all the joint property of the firm is just as liable for the joint debts after such division or settlements among themselves as it was be-

fore. So, too, it is very common for the partners to agree not only that one of them may settle and wind up the partnership concern, but that one or more shall wind it up, and for that purpose shall have in full property all the goods or funds and business, or a certain part of them, and shall pay all the debts, and this he undertakes to do. Such an agreement is so far binding on the partners, that if either of the others is obliged to pay a debt thus assumed by a partner, the partner paying may have his action for the money against the partner who undertook to pay; but so far as the creditors are concerned, all the partners remain just as responsible to all the creditors after such an agreement as they were before.''

Mr. Bates, in his recent work on Partnership, is not as decided in his views as the other authors quoted, but he evidently, from the manner in which he treats the question, inclines to the opinion entertained by these writers. 1 Bates on Part., secs. 533, 534.

As far as can be ascertained from the opinion, we believe the case of Mogelin v. Westhoff, 33 Texas, 789, announces the same doctrine.

The liability and the status of the parties are fixed by the contract, and the relation in which the parties stand to each other as determined by the engagement is as much a part of the obligation and terms of the contract as is the promise to pay, or any other essential feature of it. And it seems to me, that if the status of the party, or his liability in the form and manner in which he became bound when he entered into the engagement, can, without the consent of the creditor, be changed, it would be equally permissible to change the terms of the contract or the obligation of the parties in any other essential feature. It is a matter of contract, and as the parties have so obligated themselves they should so be bound, and should not be permitted to change their liability without the assent of the creditor. Any other rule would have the effect of impairing and changing the obligations of the parties and the terms of the contract without the consent of the parties to it. An act of the Legislature or a judicial decision that reaches to this extent would unquestionably be opposed to the spirit of the fundamental law that protects the inviolability of contracts.

It is no answer to this proposition to say, as the majority opinion undertakes to do, that the change of the status of the party from that of principal to surety does not change his liability or the terms of the contract and the obligation by which he was bound. The very facts of this case will illustrate the fallacy of such an argument. For if the retiring partner's situation was not changed, and he had remained bound as a principal, he could be held liable as a principal debtor in all events, and under no contingency would he be released; but if his condition is changed from that of principal to surety, he may be relieved from his debt, as in the case now before us. Of course the surety, when he enters into the obligation, is bound as well as the principal, and the creditor has

his remedy against both, but the obligation of the surety and his unconditional liability is not to the same extent in all cases as that of the principal obligor. The principal obligor is unconditionally bound in all events, and no contingencies or circumstances may arise that will relieve him from his obligation; but such is not the case with the surety; he may or may not be bound, as subsequent circumstances and conditions may arise. His liability is not to that unqualified extent as that of the principal.

It seems to me that the parties to the contract have the right to rely upon the engagement as they originally made it. Mutual considerations and promises lead to the execution of the contract, and I do not think that the courts have authority, without the consent of the parties, to disturb their relations and conditions as fixed by the contract, and substitute in lieu of it something never agreed to. It is a valuable right and a valuable privilege, and one of importance, that the creditor has to hold his debtors to the contract and the promises made as originally fixed by the agreement. And if they can be relieved in one respect from the operation of the contract by which they became voluntarily and legally bound, they may find relief from other conditions imposed by the same agreement that are equally valid. We do not understand that a court of law or equity will either do this, but will leave the obligation unimpaired as the parties have made it, unless it be in cases in which the policy of the law will avoid the contract, or the party, on the ground of accident, fraud, or mistake, may be relieved of its operation. No question of this kind is involved in the principle under discussion.

In my opinion the views of the court upon this question are not the correct doctrine.

Delivered January 24, 1894.