* D. L. GORE v. D. L. TOWNSEND.

*Mortgage—Application of Funds—Husband and Wife—
Dower.*

1. Where a wife joined her husband in a mortgage conveying his land,
together with personal property belonging to him, to secure his
debt, and afterwards the husband alone executed a second mort-
gage conveying the same and other personal property to secure a
second note executed by him, and before the personal property
was sold directed that the proceeds of sale of the personal property,
except so much as should arise from the sale of a mule and wagon
(about which there was no direction), should be applied to the
payment of the debt secured by the second mortgage: *Held*, that
the fund arising from the sale of the mule and wagon should be
paid upon the debt secured by the first mortgage, in exoneration
of the wife's inchoate dower interest.

2. The mortgagee cannot, because the husband failed to direct the appli-
cation of the fund arising from the sale of the mule and wagon,
apply it in discharge of the debt secured by the second mortgage,
but must pay it on that secured by the first mortgage, for which
the property is primarily liable, and in exoneration of the wife's
dower.

3. The inchoate right of the wife to dower in her husband's land, under
*The Code*, ch. 53, has a present value as property depending on
the ages, health and habits of both, and other circumstances com-
petent to show the probabilities as to the length of life of each,
and when she encumbers it by joining in a mortgage of his land
to secure his debt she becomes his surety.

This was a CIVIL ACTION, tried before *Shipp, J.*, at the Fall
Term, 1889, of ROBESON Superior Court, and was brought to
foreclose a mortgage set out in the pleadings.

The mortgage was executed to secure a note for $750,
dated 19th of March, 1884, and was made the same day, and
in addition to the land conveyed therein, which was the

* Head-notes by AVERY, J.

individual property of D. L. Townsend, two mules and one wagon were also mortgaged therein to secure said debt, which was the individual debt of said Townsend; one of the mules died subsequently. The land was acquired by D. L. Townsend in 1884, and he intermarried with *feme* defendant in 1875, and they were then, and have been ever since, citizens and residents of this State, and that it is the land on which they were living at the time they executed the mortgage, and on which they are now living, and that neither of said defendants own any other land in the State of North Carolina.

On the 12th of March, 1887, D. L. Townsend, to secure further advances from plaintiff, executed his note for $1,119.10, due on the first day of January, 1888, and secured same by a mortgage on personal property therein set out, of even date with the note, in which was included the mule and wagon also conveyed in first mortgage. About January 1st, 1888, it was mutually agreed between plaintiff and defendant D L. Townsend that all the property conveyed in the second mortgage, dated 12th of March, 1887, should be surrendered to plaintiff, and on a sale thereof on the best terms possible the proceeds, except mule and wagon, were to be credited on note and mortgage, dated 12th of March, 1887, the defendant, D. L. Townsend, however, not giving any directions as to how the proceeds of the sale of the mule and wagon above referred to, conveyed in both mortgages, were to be applied. This property, including the mule and wagon, was sold, and the proceeds of sale of mule and wagon, amounting to $114.10, were applied by D. L. Gore to the note and mortgage dated March 12th, 1887. The mule and wagon were the property of D. L. Townsend at the time of the execution of both mortgages. The *feme* defendant joined with her husband in the execution of the mortgage of 1884, and her privy examination was regularly taken. There was a verdict in response to the issues submitted to

the jury as to the value of the land, as appears in the record. Upon these facts, a trial by jury being waived, except as to the value of the land, his Honor was of the opinion that the *feme* defendant having joined in the execution of the mortgage conveying her husband's land, became a surety to the debt, and the proceeds of the sale of the mule and wagon, amounting to $144.10, should be applied as of January 1st, 1888, the time of sale, to the note and mortgage of March 19th, 1884, and so adjudged, and the plaintiff excepted. Judgment. Plaintiff appealed.

Messrs. *T. A. McNeill* and *S. C. Weill,* for plaintiff.
*Mr. W. F. French,* for defendant.

AVERY, J.—after stating the facts: "In all cases where the wife executes a mortgage on her property for her husband's debts, or for money loaned to him, it is well settled that she occcupies the position of, and is entitled to all the rights and privileges of surety for her husband." Kelly, Contracts of Married Women, p. 105. "She assumes, in the eye of a Court of Equity, the character of a surety for the husband. Properly speaking, she is not a surety, but she is so called by analogy. She has a title to call upon her husband to exonerate her estate from the debt." 1 Bish. Married Women, § 604; *Purvis* v. *Carstaphan,* 73 N. C., 575.

It is true that the inchoate right of dower was never considered an estate of interest in a court of law, which did not even concede the power of the widow to convey her unassigned dower after the right had become consummate by the husband's death, but she might make a contract for the sale that would be enforced in a Court of Equity. *Potter* v. *Everett,* 7 Ired. Eq., 152; *Boyles* v. *Commissioners,* 40 Pa. St., 37. It must be remembered, however, that the discussion of the nature of the wife's interest in her husband's land has

assumed a new phase since the enactment of the law restoring the common law right of dower in North Carolina.

In *Gwathmey* v. *Pearce*, 74 N. C., 399, Justice READE, after citing *Purvis* v. *Carstaphan*, as establishing the doctrine that the wife, when she joins her husband in a mortgage of her separate property to secure his debt, sustains the relation of his surety in that transaction, says, in reference to the former case: " Here the wife joined her husband in the conveyance of his land to pay his debt, in which land she had, *under our dower statute, a vested right to dower, to be allotted after her husband's death*, and she joined in the deed for the purpose of binding her dower. After her husband's death the whole land, her dower included, was sold under the trust deed to pay the debt. *This made the wife a creditor of her husband's estate*, to the amount of the value of her dower in the land."

The dower statute referred to by the Court was the Act of 1868–'69, ch. 93, §§ 32 to 37, and was substantially the same as §§ 2102, 2104, 2106 and 2107 of *The Code*, and, therefore, if the inchoate right to dower was a " vested right," then it is of equal dignity and importance now, and the mortgage in which the defendant's wife joined in the present case passed an interest that imparted additional present value to the mortgagee's security in proportion to the worth of her ʻlife estate in one-third of the land estimated according to the life-tables or certainly to a sum that an expert could ascertain, having as data for his calculation the value of the land and the chances of survivorship on her part after the husband's death. Although in *Gwathmey* v. *Pearce, supra*, the wife was declared a creditor of the husband's estate after his death to the value of her dower, the ruling could have been sustained only on the principle upon which it is explicitly made to rest that the wife was a surety, and she did not sustain that relation to the original contract because her husband died, but because she signed a deed that sub-

jected her interest in the land conveyed. It would seem, therefore, that this Court has settled the principle that the wife, by joining in a mortgage of the husband's land to secure his debt, becomes then a surety, and in case she survive him, and the land is sold to satisfy the debt, she becomes also a creditor to the value of the life estate. The language of §§ 2106 and 2107 of *The Code* seems to recognize the right during the husband's life as a valuable interest that may pass by a conveyance rather than a naked right that the claimant may be barred by the estoppel of her deed from enforcing, and this interpretation follows in the line of more modern legislation in making every valuable interest transferable and convertible into money, while it is in accord with the older idea that the claim of the wife to dower is favored by the law.

While there is conflict of opinion as to the nature and qualities of the wife's inchoate interest, there is much authority that, either directly or indirectly, sustains the view advanced by this Court, apart from any peculiarity in the language of our statute, and it is also strongly supported by analogy. The right of exoneration in equity grows out of the suretyship, and must exist so soon as the interest conveyed is about to be subjected to sale, and it appears that there is a fund or property belonging to the principal debtor, equally liable with such interest for the debt. The contract of suretyship, or the conveyance of one's property to secure the debt of another, is a transaction primarily between, not the principal and the surety, but the surety and the third person. 2 Bishop, M. W., § 370. In *Bullorld* v. *Briggs*, 7 Pick. (Mass.), 533, it was held that the relinquishment of the right of dower was a valid consideration for the conveyance of the equity of redemption, even as against the claim of creditors; and PARKER, Chief Justice, in discussing the nature of the wife's interest during the husband's life, says: "The consideration for this intended settlement on the wife

was her right of dower in the estate, which the husband was about to mortgage. Without her relinquishment, he could not raise the money wanted for his support and his debts. His days were numbered by intemperance and disease. Though she had no actual estate in the dower during the life of the husband, yet she had an interest and a right of which she could not be divested but by her consent, or crime, or her dying before her husband. It was a valuable interest, which is frequently the subject of contract and bargain. It is an interest which the law recognizes as the subject of conveyance by fine in England, and by deed with us." In *Vartie* v. *Underwood*, 18 Barb. (N. Y.), 561, the Court held that "the wife's inchoate right in the husband's land follows the surplus moneys raised by a sale in virtue of the power of sale in a mortgage executed by her with her husband, and will be protected against the claims of the husband's creditors by directing one-third of such surplus moneys to be invested, and the interest only to be paid to the creditors during the joint lives of husband and wife." See also *Denton* v. *Nowny*, 8 Barb., 618. In the latter case of *Wedge* v. *Moore*, 6 Cush., 8, Chief Justice SHAW, delivering the opinion of the Court, it was held that, where the husband executed three mortgages upon his land, his wife joining only in the second one, she was entitled, after his death, to dower against the third mortgagee, who had paid the debts secured by the two first mortgages. In the case of *Kelly* v. *Harrison*, 2 Johnson, 29, the Court held that a wife who remained a subject of Great Britain, while her husband took part with the Colonies in the Revolution, was entitled to dower, after the death of the husband, in all land acquired by the husband up to the beginning of the war. KENT, J., says: "But the right could not attach till the land was purchased, and I distinguish between the capacity to acquire and the vested right. The Revolution took away the one and did not impair the other."

Scribner (in his work on Dower, vol. 2, page 8) says: "Although, therefore, an inchoate right of dower cannot be properly denominated an estate in lands, nor, indeed, a vested interest therein, and, notwithstanding the difficulty of defining with accuracy the precise legal qualities of the interest, it may, nevertheless, be fairly deduced from the authorities that it is a substantial right, possessing, in contemplation of law, the attributes of property, and to be estimated and valued as such." It has many of the incidents of property. It has a present value that can be computed. *Jackson* v. *Edwards*, 7 Paige (N Y.), 386 and 408; *Buzick* v. *Burzick*, 42 Iowa, 259; Scribner, 519; *Stoppelbein* v. *Schultz*, 1 Hill (S. C.), 130. It is a valuable consideration for a conveyance to the wife. *Bullard* v. *Briggs, supra; Reid* v. *Hoist*, 55 Md. The wife may maintain an action for its protection. *Petty* v. *Petty*, 4 B. Mon. (Ky.), 215; *Burns* v. *Lynde*, 6 Allen (Mass.), 305; *Simon* v. *Canady*, 53 N. Y., 298; *Russell* v. *Taylor*, 41 Mich., 702; *Benoist* v. *Merruin*, 17 Mo., 537. She may file a bill or bring an action for the redemption of a mortgage covering it. *Davis* v. *Witherill*, 13 Allen (Mass.), 60. It has been repeatedly declared by the Courts an incumbrance within the meaning of the usual covenant in a deed. *Hill* v. *Ressigien*, 17 Barb. (N. Y.), 162; *Shearer* v. *Ronger*, 22 Pick (Mass.), 447.

The right of dower is favored by the law, and apart from the idea of suretyship a widow may maintain an action for dower in equity, and may demand that a lien upon the land be discharged out of the personal estate, or that a portion of a tract of land shall be sold to relieve the dower of the lien of a mortgage, or an equitable estate of the lien for the purchase-money. 1 Scribner, 521. It is true that it was held in *Jenness* v. *Cutlar*, 12 Kansas, 500, that where the wife joined the husband in a mortgage deed conveying his land, and waiving the homestead right, she was not a surety, but the ruling rested upon the undefined nature of the home-

stead right. It was not only not an estate, but not a right peculiar to the wife. Brent on Suretyship, § 22.

It must be recollected that the restoration of the common law right of dower by our statute worked a change in the nature of the wife's present interest in her husband's lands. It is no longer subject to the double contingency of survivorship and failure by the husband to alienate before death, but only to the former, and if he venture to sell without the joinder of the wife, a prudent purchaser, in fixing the price, will deduct from the actual value such sum as, looking to the ages of husband and wife, their habits, &c., he estimates the chances of the wife's dower to be worth. Hence, this Court in holding, in the case of *Gwathmey* v. *Pearce, supra,* that the widow was a creditor after the death of the husband to the extent of the value of the land mortgaged, because she had become his surety when she encumbered her inchoate right of dower, assigned as a reason that the then recent changes in the law had made her interest a "vested right," and imparted to it a value even during the life of the husband.

We concur with the Court below in the opinion that the wife was a surety, and the proceeds of the sale of the mule and wagon should have been applied to the payment of the debt secured by the first mortgage in exoneration of the land in which she had a valuable interest. Her right to exoneration could not be defeated by the failure of the husband to direct the application of the proceeds of the sale. of the mule and wagon, which was primarily liable under the first mortgage in exoneration of the land.

The inchoate right of the wife to dower in her husband's land has a present value, as property, depending on the ages of both, their health, habits, and other circumstances tending to show the probabilities as to the length of the life of each, and where she encumbers it by joining in a mortgage

of his land to secure his debt she becomes his surety. Her right to exoneration could not be defeated by the failure of the husband to direct the application of the proceeds of the sale of the mule and wagon, that fund being primarily liable under the first mortgage.

Error.