FALL RIVER NATIONAL BANK vs. JONATHAN SLADE.

Bristol.   November 1, 1890. — March 6, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Collateral Security — Special Pledge — Application of Proceeds — Extrinsic Evidence.*

If shares of stock are pledged to a bank by the maker of a promissory note given in renewal of earlier notes, " as collateral security for the payment of this note, or any of my liabilities to said bank, due or to become due, now or hereafter contracted or incurred," with authority " on the non-payment of this note or any other of the liabilities above mentioned" to sell the stock, the proceeds above all sums due to the bank including its expenses to be credited to such maker, no special pledge of the stock exists for the payment of the note above any other indebtedness of the maker to the bank at the time of a lawful sale thereof ; and extrinsic evidence of prior transactions between the parties and of previous forms of the note and of the provisions therein respecting the collateral security, even if admissible, is immaterial.

CONTRACT against the indorser of two promissory notes, for $7,000 and $10,000 respectively.   Writ dated August 12, 1889. Trial in the Superior Court, without a jury, before *Mason*, C. J., who found for the plaintiff for $3,366.37, and reported the case for the determination of this court.   The facts appear in the opinion.

*A. J. Jennings*, for the plaintiff.

*J. F. Jackson*, for the defendant.

BY THE COURT.   The following opinion was prepared by Mr. Justice DEVENS, and was adopted after his death as the opinion of the court by the Justices who sat with him at the argument.

In December, 1888, when William L. Slade failed, the plaintiff held four notes signed by Slade as maker, for the sums of $19,500, $10,000, $7,000, and $1,000 respectively, which were renewals of notes given originally for money loaned to him by the plaintiff.   All these notes, except the one for $10,000, were indorsed by the defendant, waiving presentment, demand, and notice, and had long been overdue.   The plaintiff held certain stocks as collateral security for the liabilities of William L. Slade, and having sold certain shares of a stock known as the Stafford Mills stock for the sum of $23,600, applied the money

received therefor to the full payment of the note of $19,500, on which there was then due $18,900 as principal, and $204.75 as interest, and applied to the payment of the $10,000 note, in addition to the value of certain other stocks which it deemed applicable to that note, the sum of $3,576.67, and further applied on the note for $1,000 a balance of $920.91, which was left after payment of the $10,000 note in the manner stated. To the application made on the note of $1,000 of the part of the amount of the $23,600 left after payment of the $10,000 note, the defendant makes no objection; but he contends that the plaintiff had no right to apply on the $10,000 note the balance of the sum derived from the sale of the Stafford Mills stock, and that he had a right to have this sum applied on the $7,000 note upon which he was indorser. As the defendant is, in any event, still indebted to the plaintiff, it is agreed that if the plaintiff had the right to apply the proceeds of the Stafford Mills stock, after satisfying the $19,500 note, to the $10,000 note, judgment shall be rendered for the plaintiff in the sum of $8,384.30, with interest from the date of the writ; but if the defendant is entitled to have the proceeds of the Stafford Mills stock, after satisfying the $19,500 note and the note for $1,000, applied next on the $7,000 note rather than on the $10,000 note, then judgment is to be rendered for the plaintiff in the sum of $3,366.37, with interest from the date of the writ.

The defendant introduced, under exception, evidence of certain facts showing the previous transactions of the parties, which he claimed should be considered in construing the notes as they existed at the time of the failure and assignment of William L. Slade. It will be more convenient first to consider the case without reference to this evidence.

The $19,500 note was dated January 1, 1885, and to the promise to pay is added: "I, having deposited with the Fall River National Bank as collateral security for the payment of this note, or any of my liabilities to said bank, due, or to become due, now or hereafter contracted or incurred, two hundred shares of the capital stock of the Stafford Mills of Fall River, hereby authorize said bank to sell the same without notice, either at public or private sale at the option of said bank, on the non-payment of this note, or any other of the liabilities above men-

tioned." It is then added, that the bank is to give the promisor credit for any balance, deducting expenses, etc., and there is a memorandum on the note that it is a renewal of a note for $19,500, dated July 10, 1878.

The note for $7,000 is dated January 10, 1885, and after the promise to pay is added: " I, having deposited with the Fall River National Bank as collateral security for the payment of this note, or any of my liabilities to said bank, due, or to become due, now or hereafter contracted or incurred, one hundred twenty-five shares of the capital stock of the Slade Mills, pledge dated November 22, 1880, and two hundred shares of the capital stock of the Stafford Mills, pledge dated July 10, 1878, hereby authorize said bank to sell the same without notice, either at public or private sale at the option of said bank, on the non-payment of this note, or any other of the liabilities above mentioned, the said bank giving me credit for any balance of the net proceeds of such sale or sales, after deducting the expenses thereof and interest, and all sums for which I may be liable to said bank, together with all costs, charges, and damages to said bank, to enforce this pledge."

The note for $10,000 is dated February 28, 1885, and after the promise to pay is added: " I, having deposited with the Fall River National Bank as collateral security for the payment of this note, or any of my liabilities to said bank, due, or to become due, now or hereafter contracted or incurred, one hundred twenty-five shares of the capital stock of the Slade Mills, hereby authorize said bank to sell the same without notice, either at public or private sale at the option of said bank, on the non-payment of this note, or any other of the liabilities above mentioned, the said bank giving me credit for any balance of the net proceeds of such sale or sales, after deducting the expenses thereof and interest, and all sums for which I may be liable to said bank, together with all costs, charges, and damages to said bank, to enforce this pledge."

It is contended by the defendant, that this presents the case of a special pledge of the Stafford Mills stock upon the $19,500 note, with a general pledge of the same security for any subsequent indebtedness; that then follows next in the order of time a special pledge of the same stock upon the note for $7,000; and

that therefore the plaintiff could only apply the proceeds of the sale of the Stafford Mills stock to the payment of the $10,000 note, which was subsequent in date, after satisfying these two notes. Where stock is specially pledged for the payment of a particular debt, the application of the proceeds would certainly be taken out of the rule which permits a holder of collateral security for several debts due to him to apply the proceeds as he may deem most for his own interest. *Wilcox* v. *Fairhaven Bank*, 7 Allen, 270. Nor do we doubt that a special pledge may be made subject to a previous special pledge which would entitle the pledgor or his surety to have an application of the proceeds made upon the debts for which it was thus specially pledged a second time, in preference to other debts then existing, or subsequently incurred. *Neponset Bank* v. *Leland*, 5 Met. 259. *Hathaway* v. *Fall River National Bank*, 131 Mass. 14.

The question is therefore presented whether there was any special pledge of the Stafford Mills stock for the payment of either the $19,500 note, or subject thereto to the payment of the $7,000 note. This stock was deposited with the $19,500 note as collateral security, not for the payment of that note only, or of that note in preference to any other. The pledge was for the payment of that note, or of any liabilities then due, or thereafter becoming due, from the principal debtor. It was to be sold, not on non-payment of the note alone, but on non-payment of any other of his liabilities either then or thereafter becoming due, and the proceeds could be applied to the payment of them or either of them. The debtor was to have credit for the balance of the proceeds only after payment of all expenses of the sale, and of all sums due the bank. While the individual note of $19,500 is mentioned, there is no suggestion that it is to receive any preference in the payment. Indeed, by the failure of the debtor to meet other liabilities, the collateral security might be sold and applied long before the $19,500 note became due.

The same reasoning applies to the second pledge of the same stock upon the $7,000 note. Neither of them constitutes a special pledge, so that, when the plaintiff lawfully sells the collateral security, he is compelled to apply the proceeds on these notes rather than on the other liabilities of William L. Slade. The form of the pledge of the Stafford Mills stock set forth in these notes strongly resembles that considered in the case of

*Richardson* v. *Washington Bank*, 3 Met. 536.    Indeed, we do not see that it can be distinguished therefrom.    The language in that case, after the description of the notes pledged as collateral, was : " That for the punctual payment of this or any other sum which I have obtained, or may hereafter obtain, on loan or discount from said bank, these notes are hereby pledged and made liable ; and the directors of said bank are hereby authorized, after said loan or loans have become due and payable, and shall remain unpaid, to sell the said notes," etc.    It was there held that the defendants were under no obligation as the party holding the security first to apply it to the payment of the loan obtained when the security was given, that the language of the contract could not be construed as giving a preference or priority to any particular debt, and that the creditor had a right to apply the proceeds of the security as he saw fit.    When collateral security is equally given for various debts, if there is one or more of the debts thus secured for which the debtor alone is responsible, and the amount of which cannot be obtained from him on account of his pecuniary inability, the proceeds may be applied so far as is necessary for that purpose to the payment and discharge of such debts, and to that extent the sureties or indorsers on notes constituting other debts have no interest or rights in them.    *Wilcox* v. *Fairhaven Bank*, 7 Allen, 270.

The defendant was allowed to introduce evidence of the various forms which the notes in question had assumed in the course of the transactions between the parties.    It appeared that the $19,500 was the last renewal of a note of July 10, 1878, which earlier note, after the promise to pay, was in the following form : " I having deposited herewith as collateral security hereto two hundred shares of the capital stock of the Stafford Mills, with full authority to sell the same without notice, either at public or private sale or otherwise at the option of the holder or holders hereof, on the non-performance of this promise, he or they giving me credit for any balance of the net proceeds of such sale or sales, after deducting the expenses thereof, and paying all sums then due from me to said holder or holders, or his or their order, which collateral is to be returned to me on the payment of this note."    The original note of $10,000 was dated November 22, 1880, the Slade Mills stock being named therein as collateral security, while the original note of $7,000 was of

the date of January 6, 1881, no collateral security being named therein, or given for the payment thereof. The original notes of $19,500 and $10,000 were renewed from time to time in the form in which they were originally made; but in December, 1881, the forms of these renewals were changed to the forms appearing in the last renewals of 1885, as cited above. At the first renewal of the $7,000 note, in May, 1881, and in all subsequent renewals, the Slade Mills stock and Stafford Mills stock were named as collateral. In what language they were thus named does not appear, as the form of the first renewal is not given in the report, but the form appearing in the last renewal was adopted in January, 1882. When the notes under discussion, together with the terms of the pledge, assumed the form which they now have in December, 1881, and January, 1882, substantially contemporaneously, and so continued through repeated renewals during a series of years, and when their present form is one entirely intelligible, no profitable inference as to their construction can be drawn from the form which they had either originally or at any time previously.

Even if in May, 1881, when the $7,000 note was first renewed, a change was made in the contracts of pledge by which the defendant had more rights in regard to the application of the collateral security to the payment of the notes upon which he was surety, there is no reason why the parties interested might not in December, 1881, and in January, 1882, so subsequently change their contracts as to give the plaintiff more rights in the application of the collateral security than it had in May, 1881. The form by which the note of $7,000 was first renewed is not before us, but the defendant's right as the notes were originally made, and in the shape they finally assumed in the construction we have given to the contract by which the collateral security was pledged, gave him no right that the $7,000 should be preferred in payment to the $10,000 note. If there was a time in the history of the transactions when this preference existed, which is not shown by the evidence reported, the defendant could not single that out and demand that his rights should be tested as of that time, rather than as they existed when the collateral security was sold and the proceeds applied by the plaintiff.

While it has been held that the renewal or extension, by note or otherwise, of an original debt secured by collateral security

does not without express agreement extinguish the original debt or security, as it cannot be inferred that the holder intended to surrender to his own detriment rights which are established, yet this principle has no application to those cases where in the renewal the collateral security is mentioned, and new or different terms are prescribed upon which it is to be held.

The defendant was allowed to put in a statement of the plaintiff's claim against William L. Slade, made up to June 15, 1887, but we do not understand from this that it appears that the plaintiff made any different application of the surplus after sale of the Stafford Mills stock from that which it claimed the right to make.

In the view we have taken of the case, the evidence as to the previous transactions of the parties, and the previous forms of their notes, and the provisions for the collateral security thereof, was not important, even if admissible.

The rights of the defendant to the application of the collateral security are to be determined by the terms of the pledge as they existed at the time of the sale thereof. According to these, the defendant had no right that the proceeds should be applied to the payment of the $7,000 note rather than that of $10,000.

*Judgment for larger sum.*