JOHN G. CAIN, Appellee, v. LOUIS VOGT and AUGUSTA VOGT, Appellants.

**Application of payments:** SECURED AND UNSECURED CLAIMS. A creditor holding claims secured by a chattel mortgage of his debtor and his wife, and also unsecured claims against the husband alone, may apply payments made by the husband to the satisfaction of the unsecured debts, in the absence of any direction otherwise, even though such payments were made from a voluntary sale by the mortgagor of the mortgaged property; and his right so to do is unaffected by the fact that the wife was surety on the secured debts and not upon those unsecured, where it appears that she had no real interest in the property but signed the mortgage to avoid the question of exemptions.

**Same.** The rules which bind a mortgagee on foreclosure and sale of the property to apply the proceeds to the satisfaction of the mortgage debt have little application, where the payments are made from a voluntary sale of the mortgaged property by the mortgagor.

**Same.** As between two debts, one due and the other not due, there is a strong presumption that payments made without express direction as to their application were intended to apply on the matured debt; and the trend of authority is to the effect that the creditor has no choice but must so apply them.

**Same:** ABATEMENT OF ACTIONS. Where the mortgagee was in possession of the mortgage during all the time that payments thereon were made, alleged his ownership and brought the same into court, and the mortgagor pleaded and proved payments made to him and treated him as owner after the time it was contended he had parted with the ownership, the mortgagor could not rely on a general allegation in his answer that the mortgagee was not the real party in interest and thus abate the action.

*Appeal from Linn District Court.*—HON. B. H. MILLER, Judge.

TUESDAY, JUNE 9, 1908.

ACTION in equity to foreclose a chattel mortgage. Decree for plaintiff, and defendants appeal.— *Affirmed.*

*Lewis Heins,* for appellants.

*F. L. Anderson,* for appellee.

WEAVER, J.— The controversy in this case involves a question of application of payments. The evidence tends fairly to establish the following facts: On January 8, 1897, the defendants, or one of them, being indebted to the plaintiff in the sum of $505, made and delivered to him their two promissory notes aggregating that sum, together with the chattel mortgage in suit, which recites that it is given to secure the payment of the mortgage debt by the said Louis Vogt. In February or March, 1897, Vogt having been sued for the rent of a farm occupied by him, and his property being seized under a landlord's attachment, plaintiff at his request made settlement of the landlord's claim by advancing the sum of $342, on payment of which the rent notes were delivered to him. Thereafter, and during the period beginning August 20, 1897, and ending September 19, 1902, a series of payments, ranging from $20 to $140 each, and aggregating $846.66 was made to the plaintiff. Of these the first four payments, made August 20, 1897, $140, September 8, 1897, $115, September 14, 1897, $50, and December 7, 1897, $75.80, aggregating $380.80, he applied to the satisfaction of the rent notes above mentioned. Thereafter he indorsed upon the notes in suit payments as follows: March 27, 1899, $71.50, July 22, 1899, $80, May 9, 1901, $100, March 24, 1902, $100, and September 19, 1902, $20. The defendants also claim to have made a single payment of about $400, but the evidence shows quite sat-

isfactorily that this is a mistake, and that the sum which they speak of is the aggregate of several smaller payments, which are duly accounted for. They also claim a credit of $69.30 under date of December 6, 1897. For this they show no receipt or voucher, except a weigher's ticket of the date mentioned, indicating a delivery of hogs of that value by the plaintiff to some person not named. The ticket is not signed or indorsed by any person. If it represents hogs sold by the defendant for the account or credit of plaintiff, it is quite probable that the same is included in the receipt for $75.80, which bears date the following day. We may therefore assume that the payments above mentioned as indorsed upon the notes are all to which the defendants or either of them are entitled to credit. Indeed, there seems to be no serious contention between counsel as to the number or amount of the payments made, but appellants' principal reliance is on the proposition that they should have been applied first to the satisfaction of the mortgage debt.

It is also alleged by the defendants in their answer that, in making these payments, they directed that the same be applied to the notes secured by the mortgage, but the allegation is not sufficiently sustained by the testimony. Neither defendant so swears. The husband does state in general terms, or by way of conclusion, that the payments were made on the notes, or to be applied on the notes and mortgages, but there is no evidence that either of the defendants ever directed such application to be made. The fact that some of the receipts given by the plaintiff expressly acknowledge payments " on notes " is not inconsistent with their application upon the rent notes. It was shown, however, that the payments were nearly or quite all made from the proceeds of sales of property included within the mortgage, and it is argued for the appellant with much persistence that, because of this fact, appellee was in duty bound to apply the moneys so received to the satisfaction of the mortgage. In support of this claim it is said that the mortgage debt is the joint

debt of both defendants, and is secured by a mortgage upon their joint property, and therefore appellee could not equitably apply the proceeds of the sale of such property to the payment of the other debt, which was that of the defendant Louis Vogt alone.

Before discussing the legal proposition it is necessary to correct, in some respects, the appellants' assumption of facts. While it is true that the mortgage debt is joint in so far as

1. APPLICATION OF PAYMENTS: secured and unsecured claims.

both defendants signed the instruments, yet when construed together, as they should be, they disclose the truth to be that the debt thus secured was, as between themselves, that of Louis Vogt. As we have already noted, the mortgage by its express terms is given to secure the payment of the debt by the "said Louis Vogt," and it is Louis Vogt who covenants to pay the attorney's fee on foreclosure, and to pay the deficiency, if any remaining, after the foreclosure sale, Moreover, there is no showing of any kind that the wife, Augusta Vogt, owned any interest whatever in the mortgaged property. On the contrary, the tenor of the mortgage as a whole indicates that the debt thus secured was that of the husband alone, and that the property mortgaged belonged to him individually. The wife's signature was doubtless obtained with the primary purpose of avoiding any question of exemption in her favor, and possibly with the further view that her liability upon the note would add something to the value of the security. In the light of these facts a defense, based upon the joint character of the mortgage debt, and joint ownership of the mortgaged property, fails for want of evidence to support it.

Nor does the fact that the wife was a surety upon the mortgage debt, and not upon the unsecured debt, deprive the plaintiff of his right to apply the payments received to the latter, in the absence of any direction to credit them upon the former. Indeed where but one of the debts is secured, and payments are made of which neither the cred-

itor, nor the debtor makes application, the court under the rule prevailing in this State will apply it to the reduction of the unsecured claim. *Bishop v. Hart,* 114 Iowa, 96; *Illsly v. Grayson,* 105 Iowa, 687; *Whiting v. Eichelberger,* 16 Iowa, 422; *Fargo v. Buell,* 21 Iowa, 292; *Hanson v. Manly,* 72 Iowa, 48; *Hall v. Johnson,* 6 Tex. Civ. App. 110 (24 S. W. 861); *Brewer v. Knapp,* 18 Mass. 332; *Harding v. Tifft,* 75 N. Y. 461; *Hare v. Stegall,* 60 Ill. 380; *Wilhelm v. Schmidt,* 84 Ill. 183. There are authorities for the contrary rule, but they have not been followed in this State.

It remains to be considered whether the fact that the payments were made from money obtained by the mortgagor's voluntary sale of part of the mortgaged property calls for the application of any different rule.

**2. SAME.** We have found no precedent for this situation in our own decisions. Of course, if the creditor forecloses his mortgage, the proceeds of the sale will be applied upon the debt thereby secured, because the very purpose of the foreclosure is to convert the security into money for the payment of that specific debt. But if the mortgagor voluntarily sells the property, and turns the money thus realized over to the creditor without direction for its application, the right of the latter to apply it to the unsecured debt is, in our judgment, a logical deduction from the propositions of law to which we have already given our adhesion. The books are not wanting in authority bearing upon the point here presented. It has been held that the mortgagee of a crop may apply payments, made from the sale of the crop, to the satisfaction of unsecured advances. *Mercer v. Tift,* 79 Ga. 174 (4 S. E. 114). See also, *Ross v. Perrault,* 13 Grant's Ch. 206; *Richardson v. Coddington,* 49 Mich. 1 (12 N. W. 886). The sureties on a bond, given to secure repayment of advances made, and for the purchase of goods, cannot require that money received from the sale of the goods shall be first applied to repay the advances, unless an agreement

therefor is shown. *Turner v. Yates,* 57 U. S. 14 (14 L. Ed. 824).

Rules which bind the mortgagee who sells upon foreclosure, or takes possession of and sells and converts the security, have little application to a case where the payment is made from money obtained by a voluntary sale by the mortgagor. In the latter case the lien of the mortgage does not follow or attach to the money, and the mortgagee has no recourse upon any other person to whom such moneys may be paid. In the hands of the mortgagor they have no different character than moneys derived from a wholly different source; and when paid over to the mortgagee in the absence of agreement or direction as to their application, the latter has the right to credit them upon the unsecured debt without regard to the source from which they were obtained by the debtor.

There is another significant fact in the case. The notes in suit were given January 8, 1897, and made to become due one and two years after date, while the debt represented

3. SAME.

by the rent notes, taken up by plaintiff in February and March, 1897, was past due. The four payments, the application of which is in controversy, were all made in 1897, and before either of the notes in suit had matured. Under such circumstances there is a strong presumption that payments, made without express direction for some other application, were intended to apply on the matured debt. If neither party had designated the debt to which the payment should be applied, the law would make the application in accordance with such presumption. *Richardson v. Coddington,* 49 Mich. 1 (12 N. W. 886). Indeed, in the absence of an express agreement or an application by the debtor, the trend of authorities is to the effect that, as between two debts, one due, and one not due, the creditor has no choice, and the application must be upon the latter. *Bacon v. Brown,* 4 Ky. 334 (4 Am. Dec. 640); *Parks v. Ingram,* 22 N. H. 283 (55 Am. Dec. 153); *Bobe*

*v. Stickney,* 36 Ala. 482; *Richardson v. Coddington, supra.* It should be said before leaving this branch of the case that the rules of law to which we have referred, while generally recognized and approved, are not without their exceptions, and that a court of equity will always feel at liberty to so control their application as to prevent manifest injustice to either party. But there is nothing in this case calling for a consideration of the exceptions. The finding of the district court in this respect has our approval.

Finally, it is claimed that plaintiff is not the real party in interest, and therefore the action must be abated. In the course of the trial the fact was developed that in November, 1897, the plaintiff assigned the mortgage and notes in suit to S. M. Cain. Except as the same may have been involved by the general denial in the defendants' answer, no point was made upon the ownership of the notes in the court below; but appellants insist that it was in issue, and advantage may be taken of it in this court. We cannot so hold. The note and mortgage were in plaintiff's possession. He brought them into court. His petition alleges ownership in himself; and while the answer denies in general terms so much of the petition as is not expressly admitted, it proceeds to treat the plaintiff as the owner, and pleads and relies upon payments made to him long after the date of the assignment. The testimony shows without dispute that during all of these years, while these payments were being made, the plaintiff was in possession and control of the notes, and defendants were recognizing him as the owner, and we think that the objection that plaintiff is not shown to be the real party in interest cannot be upheld. *Farmers' Bank v. Arthur,* 75 Iowa, 129.

The decree of the district court is *affirmed.*

4. SAME: abatement of actions.