[Civil No. 2951.   Filed July 13, 1931.]

[1 Pac. (2d) 970.]

SECURITY TRUST AND SAVINGS BANK, a Corporation, Appellant, v. LEE JUNE and J. E. HELTON, Appellees.

Mr. Terrence A. Carson and Mr. Glenn Copple, for Appellant.

Mr. Henry C. Kelly and Mr. W. F. Timmons, for Appellees.

LOCKWOOD, J.—Security Trust & Savings Bank, a corporation, hereinafter called plaintiff, brought suit against Lee June and J. E. Helton, hereinafter called defendants, on a promissory note in the sum of $400. June filed a separate answer, admitting the execution of the note by himself and his co-defendant, but alleged that he executed it as accommodation maker only, and that at the time he signed it, it was secured by a chattel mortgage on certain cotton, maize, and wheat to be grown during the crop season of 1926 by defendant Helton; that thereafter Helton did grow and harvest twelve bales of cotton, which were covered by said crop mortgage, and that said cotton was turned over by Helton to plaintiff and by the latter sold for more than sufficient to pay off the note in question, but that plaintiff used the proceeds thereof to pay off other indebtedness of Helton to it, incurred after the execution of the note, which indebtednesses were not secured by the crop mortgage. June prayed that as to him plaintiff be required to credit on the note the sum realized from the sale of the cotton as aforesaid.

The matter was heard before the court sitting without a jury, and judgment was rendered in favor of plaintiff as against Helton, but in favor of June as against plaintiff, on the ground that as far as he was concerned, plaintiff was bound to credit the proceeds of the cotton on the note involved in this action.

From the judgment and the order overruling the usual motion for new trial plaintiff has appealed.

Defendants have moved to dismiss the appeal on the ground that it was not taken in the time prescribed by statute, but we are of the opinion, without discussing the reasons in detail, that the motion is not well founded, and should be denied, and the case decided on the merits of the appeal. Interpreting the evidence in the most favorable light in favor of defendants, as we must do under our rule, the facts appear to be as follows:

Helton had leased some sixty acres of land in the Yuma Valley during the year 1926, and was about to plant the same to cotton and other crops. Desiring to secure money for this purpose, he arranged to borrow from plaintiff the sum of $400, and to give as security therefor, and for the further sum of $200, which might later be advanced for the same purpose, a mortgage covering the future crop. The bank, however, desired another party on the note, and Helton therefore got June to sign it as accommodation maker. These facts were mutually understood at the time of the execution of the note by all parties to the transaction. Later the bank advanced the $200 additional above referred to, taking Helton's individual note therefor, but it appeared that this was not sufficient to mature and market the crop, and so the bank advanced from time to time some $600 additional on Helton's unsecured notes. When the crop was harvested Helton turned all of his interest therein over to plaintiff, and it was sold by the latter for something over $600. The total indebtedness of Helton to plaintiff at that time was approximately $400 on the note herein, $200 for the subsequent advance under the terms of the mortgage, and $600 for other sums later advanced by plaintiff to him on unsecured notes. No directions were given by him to plaintiff as to how the proceeds of the cotton were to be applied, and

accordingly the latter credited it on the unsecured notes, which practically exhausted the entire amount received, and then brought this action. Had the money received from the sale of the crop been applied to the note involved herein and the $200 additional indebtedness secured by the mortgage, it would have paid both of them.

There are many assignments of error, but taken altogether they raise but two legal questions which we need discuss. The first is whether or not the mortgage as a matter of law secured not only the note in question and the $200 additional first advanced, but also the balance of the money advanced by plaintiff for the purpose of maturing and harvesting the crop covered by the mortgage. The terms of the mortgage itself, so far as material, read as follows:

"The said sum so secured by this mortgage consists of a debt in the sum of $400.00, evidenced by a certain promissory note, in words and figures following, to-wit: . . . hereby made a part of this mortgage; and the further sum of $200.00 to be advanced in the future by the mortgagee to the mortgagor to aid in the production and harvesting of said mortgaged crops, which said future advancement if made shall be evidenced by a note or notes of like tenor and effect as the promissory note or notes hereinabove set forth at length, and shall be payable at the same time and place as the said note, or, if more than one, at the time and place that the last of said notes is payable, and shall bear like rate of interest, and be dated as of the day of the advancement, and nothing herein shall be deemed an obligation on the mortgagee to make such advancement or any part thereof."

The mortgage further provides that if the mortgagor fails to cultivate properly the land the mortgagee may take possession of it and cultivate it and charge the costs thereof to the mortgagor, and it is urged by plaintiff that this in effect makes the mortgage security for any further advances made

by it. The answer to that suggestion is that since the mortgagee did not use the right given it in the mortgage to make the crop itself, it cannot take advantage of those provisions, which were by its terms available only under such circumstances, at least as against June. We are of the opinion that the mortgage covered only the $400 note involved in this action, and the additional $200 which it is agreed was later advanced.

We have then before us the real question in the case, which may be stated in the abstract as follows: If A executes a note and chattel mortgage to B, and thereafter secures C as accommodation maker or indorser on the note, and later B loans A additional sums not covered by the security of the mortgage, if A turns the mortgaged crop or its profits over to B voluntarily, may the latter apply the proceeds to any of the debts in his discretion, or is he bound, so far as C is concerned, to apply the proceeds first to paying the note guaranteed by C and specifically secured by the mortgage? The question is one of first impression in this jurisdiction, but it has been raised repeatedly elsewhere. The authorities are not uniform on the subject. The general rule of law, of course, is that in the absence of direction by the debtor, a creditor may apply payments made by the former to such portion of the debt as he prefers, and the mere fact that one of the debts in question is covered by the obligation of a surety does not defeat the right of the principal debtor of the creditor to apply the payment to another debt. *California National Bank* v. *Ginty,* 108 Cal. 148, 41 Pac. 38; *Consolidated Naval Stores Co.* v. *Wilson,* 82 Fla. 396, 21 A. L. R. 681, 90 South. 461; *Boyd* v. *Agricultural Ins. Co.,* 20 Colo. App. 28, 76 Pac. 986; *Crane Co.* v. *Pacific Heat & Power Co.,* 36 Wash. 95, 78 Pac. 460. And if collateral is pledged to secure a number of different debts, one of which is also guaranteed by a surety,

the creditor may apply the proceeds of the collateral to the debts not so guaranteed. *Kortlander* v. *Elston,* (C. C. A.) 52 Fed. 180; *Wood* v. *Noyes,* (C. C. A.) 279 Fed. 321; *California National Bank* v. *Ginty, supra; Fall River National Bank* v. *Slade,* 153 Mass. 415, 12 L. R. A. 131, 26 N. E. 843.

When, however, the collateral is pledged for the security of a specified debt, for which a guaranty has also been given by a surety, the majority rule is that the proceeds of the collateral cannot be first applied by the creditor to a debt not embraced by the pledge, without the consent of the surety. *Brown* v. *First National Bank,* (C. C. A.) 112 Fed. 901, 56 L. R. A. 876; *Consolidated Naval Stores* v. *Wilson, supra; First National Bank* v. *Scott,* 123 N. C. 538, 31 S. E. 819; *First National Bank* v. *Ballard,* 41 Okl. 553, 139 Pac. 293; *Beaver Trust Co.* v. *Morgan,* 259 Pa. 567, 103 Atl. 367; *Gore* v. *Townsend,* 105 N. C. 228, 8 L. R. A. 443, 11 S. E. 160. The contrary doctrine prevails in Iowa (*Cain* v. *Vogt,* 138 Iowa 631, 128 Am. St. Rep. 216, 116 N. W. 786) and perhaps a few other states, but we are of the opinion that the rule above set forth is most in consonance with the principles of equity and supported by the better weight of authority, and we adopt it as the law of Arizona.

There are other minor matters presented on this appeal which we have considered, but it is unnecessary to discuss them. For the foregoing reasons the judgment of the superior court of Yuma county is affirmed.

McALISTER, C. J., and ROSS, J., concur.