**AMERICAN SAVINGS BANK,**
**Appellant,**

v.

**Janice C. WASCHKAT, Appellee,**

**and**

**Lavern H. Waschkat, Defendant.**

**No. 86–1860.**

Supreme Court of Iowa.

May 11, 1988.

Rehearing Denied June 15, 1988.

---

David M. Engelbrecht of Engelbrecht, Ackerman & Hassman, Waverly, for appellant.

Gary J. Boveia of Boveia Law Offices, Waverly, for appellee.

CARTER, Justice.

The plaintiff, American Savings Bank (the bank), appeals from an order of the district court which reduced the amount of a judgment it recovered against appellee, Janice Waschkat, as co-obligor on a promissory note. This action by the court was premised on receipt by the bank of the proceeds of collateral securing the note in controversy. The collateral was owned by Janice's co-obligor, Lavern Waschkat, was sold by him, and the proceeds were applied by the bank on other obligations owed to it by Lavern individually.

The primary issue which the appeal presents is whether a co-obligor on a promissory note, who has no ownership interest in collateral given as security for that note, may complain when the other co-obligor, who does own the collateral, acquiesces in its sale for purposes of satisfying debts for which the owner of the collateral is solely liable. Because we answer this question in the negative, we reverse the judgment of the district court.

This controversy involves several loans from the bank to Lavern, who is a nonappealing defendant in the case. With respect to one of these loans, a December 29, 1982, promissory note, Janice was jointly obligated. Two boxes were checked on this printed note which indicated the existence of a financing statement dated May 2, 1979, and a security agreement for collateral described as "18 Holstein milk cows; 4 Holstein heifers; 16 feeder calves; all 1983 crops; John Deere 7700 combine with corn and bean heads; machinery as listed on schedule A attached." The May 2, 1979, financing statement identified on the face of the note was signed by both Lavern and Janice and covered "All Equipment, All Farm Products, Including But Not Limited To Crops, Livestock, Supplies Now Owned Or Hereafter Acquired, Used Or Produced In Farming Operations, Contract Rights And Accounts Receivable And Proceeds From Sales."

On March 15, 1984, the bank filed a petition against Lavern and Janice seeking a judgment for the amount due on the joint note of December 29, 1982, which was in default. Lavern did not respond to the bank's petition. Janice filed an answer generally denying the allegations.

A petition for dissolution of the Waschkats' marriage was filed by Janice on March 18, 1983. A decree dissolving the marriage was entered on September 11, 1984. The decree was not offered as evidence in the present litigation, but the district court order from which this appeal is taken makes the following reference to its provisions:

The Waschkats' marriage was dissolved by decree filed September 11, 1984, in Bremer County Cause No. 21877. Pursuant to the decree Lavern was awarded the farm assets and Janice was awarded a property settlement for her interest in said assets of $70,000 payable in ten equal annual installments of $7,000 with interest at the rate of seven percent per annum.

Although we have said that an Iowa district court should not, in one case, take judicial notice of another of its cases, *see Cunha v. City of Algona*, 334 N.W.2d 591, 594 (Iowa 1983), the parties to this appeal do not dispute the accuracy of the foregoing recitation, so we accept it as an accurate depiction of the legal effect of the divorce decree.

While the dissolution action was pending, the bank filed a motion for summary judgment in the action on the joint note. A hearing was held on that motion in November 1985, more than a year after the dissolution decree. This resulted in an order sustaining the bank's motion as to both Lavern and Janice. Pursuant to this ruling, plaintiff was awarded judgment on December 6, 1985, jointly and severally against Lavern and Janice in the sum of $39,943.75 plus accrued interest.

On December 16, 1985, Janice filed a petition to vacate the judgment, in whole or in part, under Iowa Rule of Civil Procedure 252. This petition alleged that, following the dissolution decree and prior to the entry of judgment in the action on the joint note, Lavern had sold some of the farm machinery which was collateral for the December 29, 1982, note. It further alleged

that the bank had applied the net proceeds of that sale, totaling $12,500, on other notes of Lavern for which Janice was not jointly liable.[1] Following a hearing, the trial court concluded as follows:

The law generally provides that a creditor who knows that a payment represents the proceeds of collateral for a joint note must apply the payment on the joint obligation rather than on one joint debtor's individual debt. Similarly, the proceeds of collateral pledged for a debt on which another is secondarily liable must be applied to the debt for which the collateral was pledged, unless the party secondarily liable consents to a different application.

Based on this conclusion, the court ordered that plaintiff's judgment against Janice be reduced by the sum of $12,500.

In seeking reversal of the district court's order, the bank advances two lines of argument. Its first argument is directed at the court's suggestion that, because the farm machinery which was sold was collateral for the joint obligation of Lavern and Janice, the sale proceeds must be applied to reduce that obligation. The bank asserts that although the machinery was collateral for the joint note it was also collateral for the individual notes signed by Lavern toward which the proceeds were applied. Janice disputes the factual basis for this contention and urges that Lavern's individual notes were not secured by the farm machinery.

The bank's second argument is that, even if only the joint note was secured by the farm machinery, the court erred in concluding that there was some legal basis for disturbing the allocation of the sale proceeds which had been made by the bank and acquiesced in by the owner of the collateral more than two months before the original judgment was entered against Janice. Because we find that the bank is entitled to prevail on its second argument, we need not consider the first.

---

1. Janice contends that she first learned of these events at a contempt hearing held in the dissolution of marriage action three days after the entry of judgment for the bank in the action on the joint note.

One of the authorities urged by the bank in the district court for purposes of defeating Janice's attempt to reduce the judgment against her was *Cain v. Vogt,* 138 Iowa 631, 116 N.W. 786 (1908). The district court discusses this case in its order. In our view, the principles applied in the *Cain* case bear directly on the issue now under consideration.

In *Cain,* the plaintiff held several promissory notes of Louis Vogt. One of these notes was signed by both Louis Vogt and his wife, and was secured by a chattel mortgage. The others were only signed by Louis Vogt and were unsecured. A series of payments was made by Louis Vogt to plaintiff, which plaintiff applied on the unsecured notes. Plaintiff thereafter sued both Louis Vogt and his wife on the secured note. In defending against the claim, the Vogts offered evidence that the source of some of the payments which the plaintiff had applied to the unsecured notes was the sale of the collateral which secured the joint note.

In rejecting this contention, this court stated:

> [T]here is no showing of any kind that the wife, Augusta Vogt, owned any interest whatever in the mortgaged property. On the contrary, the tenor of the mortgage as a whole indicates that the debt thus secured was that of the husband alone, and that the property mortgaged belongs to him individually. The wife's signature was doubtless obtained with the primary purpose of avoiding any question of exemption in her favor, and possibly with the further view that her liability upon the note would add something to the value of the security. In the light of these facts a defense, based upon the joint character of the mortgage debt, and joint ownership of the mortgaged property, fails....

*Id.* at 634, 116 N.W. at 787. The court proceeded to affirm the district court's judgment for the unpaid balance of the secured note against both of the Vogts with no reduction for the amounts which the plaintiff had received from sale of the mortgaged property.

The district court believed that the *Cain* case was distinguishable and of no application to the present controversy. We must disagree with that conclusion. None of the distinguishing features of the *Cain* case suggest that the reasons given for refusing to reallocate the sale proceeds in that case should not apply here. Indeed, there are significant points of distinction which make *Cain* a stronger case for reallocation. These include the fact that in *Cain* both the husband, as owner of the collateral, and the wife were urging a reallocation of payments. In the present case, Lavern, the sole owner of the collateral, has never made such request.

In addition, the record in *Cain* indicated that, as between Louis Vogt and his wife, he was the primary debtor and she was a surety. That circumstance presents a stronger argument for reallocation of payments than the situation existing in the present case where, following the dissolution decree, Lavern and Janice remained equally liable on the joint debt. The only point of distinction which conceivably favors Janice is that, in *Cain,* the wife did not sign the security agreement. The court found, however, that the wife was jointly liable on the note. Under these circumstances, the absence of her signature on the security agreement was without legal significance because she was not an owner of the collateral.

█ We believe significant facts which led to the refusal to reallocate payments in *Cain* are present in this case. In neither *Cain* nor the present case did the wife have any interest in the collateral. Also, in both cases, the husband sold the collateral and turned the proceeds over to the lender without specific direction that they should be applied on the joint obligation. Our cases hold that under such circumstances the lender may apply the payment as it sees fit. *See, e.g., Van Dusseldorp v. State Bank of Bussey,* 395 N.W.2d 868, 871 (Iowa 1986).

The authorities upon which the district court relied in reallocating payments turn on principles derived from forced sales. We do not believe the present case takes on

the atmosphere under which those principles were derived. As was stated in the *Cain* case:

> Rules which bind the mortgagee who sells upon foreclosure, or takes possession of and sells and converts the security, have little application to a case where the payment is made from money obtained by a voluntary sale by the mortgagor. In the latter case the lien of the mortgage does not follow or attach to the money, and the mortgagee has no recourse upon any other person to whom such moneys may be paid. In the hands of the mortgagor they have no different character than moneys derived from a wholly different source....

*Id.* 138 Iowa at 635, 116 N.W. at 788. Although the bank in the present case did have a security interest in the proceeds, a situation which differs from that in *Cain,* this is of no legal significance in view of the fact that the owner of the collateral has not challenged the action taken by the bank.

■ The district court appeared to rely on statements concerning the "source" or "identical property" rule set forth in 60 Am.Jur.2d *Payments* § 107 (1972). There, the text states:

> If the debtor is under a duty to a third person to devote funds paid by such third person to the discharge of a particular debt, the payment must be so applied if the creditor knows or has reason to know of that duty.

*Id.* at 953. Illustrative of this principle is the case of *Moser Paper Co. v. North Shore Publishing Co.,* 83 Wis.2d 852, 266 N.W.2d 411 (1978), where the court states:

> [W]hen a payment made to a creditor is known by the creditor to be derived from a particular source or fund, the creditor must apply it to the exoneration of the debt related to that source or fund, at least where the rights of third parties are concerned.

*Id.* at 857–58, 266 N.W.2d at 415. This principle is aimed at situations where someone other than the debtor provides a source of funds for payment of another's debt under circumstances where the creditor either knows or should know that the third person wants the payment applied in a particular manner. We do not believe that this rule has any application in the present case. The source of the payment here was Lavern's property. He himself was the debtor, and he acquiesced in the disposition of the funds turned over to the bank.

The issue in the present case is not really whether the bank could unilaterally apply the proceeds of the sale on Lavern's notes rather than the joint note of Lavern and Janice. The issue is whether the bank, as secured party, and Lavern, as sole owner of the collateral, could jointly agree how those proceeds were to be applied. Perhaps the bank inaugurated the course of dealing which took place, rather than Lavern, but this is without legal significance in view of Lavern's obvious acquiescence in what was done. The appellee has suggested no legal principle which gives a jointly obligated debtor, who does not own the collateral, a right to interfere with such a decision.

The rulings of the district court on Janice's petition under rule 252 were bifurcated. There was one ruling vacating the former judgment and, following the taking of evidence, there was another order entering a new judgment against Janice for $12,500 less than the original judgment. We conclude that the original judgment should have been permitted to stand. The final judgment of the district court in the trial of the rule 252 petition is therefore reversed, and the case is remanded to that court for reinstatement of the December 6, 1985, judgment.

REVERSED AND REMANDED.

All Justices concur except ANDREASEN, J., who dissents. McGIVERIN, C.J., joins this dissent.

ANDREASEN, Justice (dissenting).

After Lavern and Janice Waschkat signed the December 29, 1982 promissory note and security agreement that conveyed a security interest in their farm machinery, the American Savings Bank made a number of loans to Lavern Waschkat that were secured by collateral other than the farm

machinery. While this lawsuit was pending, the bank made four loans to Lavern totaling $17,500. None of these loans were secured by the farm machinery.

In the summer of 1985, Lavern met with Thomas Dental, the vice-president and chief executive officer of the bank. He advised Lavern that because of his loan status, it would be difficult for the bank to advance him a loan. It was then decided that the farm machinery would be sold. Lavern was to employ the auctioneer and the bank was to clerk the sale at no expense to Lavern. Dental testified that after the farm machine sale, "Lavern agreed the balance of the money should probably go to the bank to pay off notes that the machinery secured." The net proceeds of the sale were applied on the notes that were not secured by the farm machinery.

Because Janice no longer had any interest in the farm machinery after the dissolution of marriage, the majority of this court holds that she has no right to object to the bank's application of the proceeds from the sale of collateral upon Lavern's debts. The majority relies on the case of *Cain v. Vogt*, 138 Iowa 631, 116 N.W. 786 (1908). In *Cain*, the court recognized as a significant fact in support of its ruling that the lien of the chattel mortgage did not follow or attach to the money received from the sale of mortgaged property. *Id.* at 636, 116 N.W. at 788. The *Cain* court also recognized that the payments were applied on the notes that were mature, while the note secured by the chattel mortgage was not due at the time the payments were made. Under such circumstances there is a presumption that the payments were intended to be applied to the mature debt. *Id.* at 636, 116 N.W. at 788. I agree with the district court that *Cain* is distinguishable.

I recognize the general rule that when a debtor owes a creditor multiple debts, the debtor may direct the application of payments to one or more of the debts. If the debtor does not direct the application of payments, the creditor may normally apply the payment as it chooses. *See Lumber Supply Inc. v. Hull*, 158 N.W.2d 667, 669 (Iowa 1968). These general rules also apply to joint debts. Thus, as set forth in 60 Am.Jur.2d Payments § 119 (1972):

A joint obligor making a payment with his own funds may designate that it is to be applied only to his share of the debt, and the creditor must apply the payment accordingly. Where an undirected payment is made by a debtor who has both a joint obligation and an individual obligation with his creditor, the creditor may apply the payment to either debt, as suits his pleasure.... *A creditor who knows that a payment represents the proceeds of collateral for a joint note must apply the payment on the note rather than on one joint debtor's individual debt to him.*

*Id.* (footnotes omitted) (emphasis added). Under this exception to the general rule, a creditor with knowledge that the payment is from the sale of collateral securing a joint note would be required to apply the payment on the joint note rather than on a separate note signed by one of the debtors.

Had the bank sold the farm machinery, Iowa Code section 554.9504 (1987) would require the net proceeds from the sale of collateral by a secured party be applied to satisfy the indebtedness secured by the security interest under which the disposition is made. The fact that a codebtor had no interest in the collateral sold would not alter the statutory requirement. As a co-signer, Janice would be a debtor entitled to the statutory protection in that situation even if she had no rights in the collateral. *See generally Stockdale, Inc. v. Baker*, 364 N.W.2d 240 (Iowa 1985).

Although the bank did not sell the collateral, it did participate in the sale and was aware of the source of the $12,500 payment. A creditor, with knowledge that the payment is from the sale of collateral securing a joint note, should apply the payment on the joint note which was secured by the collateral, rather than on a separate note signed by one of the debtors.

For the above reasons, I respectfully dissent.

McGIVERIN, C.J., joins this dissent.